Letcher T. WHITE, Appellee,

v.

JEFFREY MINING MACHINERY COMPANY, Jeffrey Galion, Inc., and Dresser Industries, Inc., Appellants.

Appeal No. 83–640.

United States Court of Appeals, Federal Circuit.

Dec. 7, 1983.

William H. Webb, Pittsburgh, Pa., argued, for appellants. With him on the brief were John M. Webb, David C. Bruening, Pittsburgh, Pa., and Robert L. Milby, London, Ky.

David Yancey White, Corpus Christi, Tex., argued, for appellee.

Stanley Price, Jr., Pittsburgh, Pa., of counsel.

John M. Lyttle, Manchester, Ky., of counsel.

John F. Booth, Dallas, Tex., of counsel.

Before DAVIS, Circuit Judge, NICHOLS,* Senior Circuit Judge, and JACK R. MILLER, Circuit Judge.

JACK R. MILLER, Circuit Judge.

This is an appeal from the United States District Court for the Eastern District of Kentucky. Plaintiff-appellee White sued Jeffrey Mining Company, et al. ("Jeffrey") for infringement of claims 1, 12, and 13 of his United States Patent No. 3,524,680 [1] for a mining machine. After a jury trial, the patent claims in issue were held valid and found infringed. The jury awarded White $8 million, which was increased to $12 million by the trial judge. Jeffrey's motions for judgment notwithstanding the verdicts and for a new trial were denied. We reverse on the validity of the patent claims and vacate the award of damages. The issue of infringement is not raised on the appeal.

* Judge Nichols assumed senior status effective October 1, 1983.

1. Issued August 18, 1970, on application No. 769,574, filed October 22, 1968, for "Mining Machine Having Spiral Cutters With Scavenger Board."

2. Claim 12 provides:
   A mining machine comprising
   a shaft
   having a helix thereon
   provided along the edge thereof at spaced points with cutting elements,
   means for driving said shaft,
   means for applying force laterally to said shaft at spaced points therealong to move it laterally into a vein of coal to cut the latter,
   a scavenger board arranged at the side of said helix opposite the vein of coal,
   said scavenger board comprising a pair of overlapping flat plates vertically slidably connected to each other,
   the upper of said plates having mechanical connection with said shaft to move therewith as said helix advances into the vein of coal,

BACKGROUND

White originally brought suit in 1974 against Jeffrey for infringement and for unfair competition arising from development and sale of Jeffrey's 101MC mining machine. Claim 1 is illustrative:
   A mining machine comprising
   a shaft
   having a helix thereon
   provided along the edge thereof at spaced points with cutting elements,
   means for driving said shaft,
   means for applying force laterally of said shaft at spaced points therealong to move it laterally into a vein of coal to cut the latter,
   a rigid scavenger board at the side of said helix opposite the vein of coal and longitudinally coextensive with said helix,
   and bearings for said shaft
   having mechanical connection with said scavenger board whereby the latter moves laterally with said shaft.

Claim 12 [2] further defines the scavenger board as a pair of overlapping flat plates vertically slidably connected to each other, the board forming with the floor of the mine and the vein of coal a trough in which the helix acts as an auger conveyor to move coal endwise of the trough. Claim 13 [3] requires that the scavenger board comprises

   said scavenger board forming with the floor of the mine and the vein of coal a trough in which said helix acts as an auger conveyor to move coal endwise of said trough.

3. Claim 13 provides:
   A mining machine comprising
   a shaft
   having a helix thereon
   provided along the edge thereof at spaced points with cutting elements,
   means for driving said shaft,
   means for applying force laterally to said shaft at spaced points therealong to move it laterally into a vein of coal to cut the latter,
   and a scavenger board comprising relatively vertically movable elements and having a lower edge resting on the floor of the mine, said scavenger board, the floor of the mine and the vein of coal forming a trough in which said helix acts as an auger conveyor to move coal longitudinally of said trough,
   said scavenger board having mechanical connection with said shaft and with said means for applying lateral force to said shaft whereby said scavenger board will be moved with

relatively vertically movable elements having a lower edge resting on the floor of the mine.

The White invention is illustrated in the patent, thus:

Shaft 36 has a *helix* 28 thereon with *cutting elements* 46 provided at spaced points. Motors 38 provide *means for driving* the shaft. Hydraulic rams 52 apply *lateral force* to move the helix laterally into a vein of coal. A *scavenger board* 104 is on the side of the helix opposite the vein of coal and forms said shaft as the latter advances to cut into the vein of coal.

with the floor of the mine and the vein of coal a *trough* in which the helix acts as an *auger conveyor* to move coal endwise of the trough. The illustrated embodiment is a "longwall miner."

The accused 101MC miner is illustrated as follows:

## THE PRIOR ART

United States Patent No. 3,445,139 to Von Hippel teaches a longwall miner having a helical cutter that acts as an auger to move coal endwise of the helix, as shown below:

## VON HIPPEL

United States Patent No. 3,161,439 to Newton et al. discloses a continuous miner having a helical cutter on the end of each of two arms. When cutting, the arms swing in an arc from the position shown in figure A to that shown in figure B. The cut coal is confined by a cuttings confining plate and a scraper blade (see figure C). The helical cutters "advance the mined material rearwardly" into the path of the screw conveyors that, in turn, move it to the central conveyor. A subsequent cut would follow the dotted line in figure B.

NEWTON ET AL.

FIG. B

FIG. C

FIG. A

East German Patent No. 20,646 to Seidelbach teaches a miner that cuts from the floor of a mine. Helical cutters act as augers to convey cut material inward to a central conveyor.

SEIDELBACH

Von Hippel was considered by the Patent and Trademark Office ("PTO") during prosecution of the application on which the White patent issued; Newton et al. and Seidelbach were not. The trial court also considered several other prior art patents, as well as mining machines marketed by Jeffrey before White's date of invention.

## DISTRICT COURT

■ The questions of obviousness, anticipation, and infringement were submitted in the form of special interrogatories to the jury, which resolved those questions in favor of White in the form of several individual verdicts. The jury did not return a general verdict and did not state any findings regarding scope and content of the prior art, differences between the prior art and the claimed invention, or level of ordinary skill in the art.[4] In response to Jeffrey's motions for judgment notwithstanding the verdicts, the court said: "if the question of obviousness is one of law, the Court adopts the answers to the interrogatories by the jury on that issue."[5]

## ANALYSIS

■ It is necessary first to treat Jeffrey's argument that the court below erred in failing to make an *independent* evaluation of the question of obviousness. Jeffrey argues that the judge improperly submitted this question of law to the jury and adopted its conclusion as his own, without the benefit of underlying findings of fact. The argument is without merit. Submission of such a question of law to a jury, accompa-

nied by appropriate instructions, is proper. *Connell v. Sears, Roebuck & Co.,* 722 F.2d 1542 (Fed.Cir.1983). Moreover, we are satisfied that the trial court effectively ruled on the question of obviousness by its disposition of Jeffrey's motions for judgment notwithstanding the verdicts and for a new trial. However, as related above, there is an absence of stated findings on which a conclusion of obviousness can be reviewed. Nonetheless, it appears that the parties are in substantial agreement on the facts bearing on the question of obviousness. The relevant prior art is embodied in the Von Hippel patent, the Newton et al. patent, the Seidelbach patent, and the other patents before the court, as well as the mining machines marketed by Jeffrey before White made his invention. White acknowledges in his brief that "[t]he scope and content of the prior art as cited by Defendants is not an issue." Likewise, the level of ordinary skill in the art is not a point of serious disagreement. Jeffrey proposes that "[t]he tools that the man of ordinary skill had available to him are shown in the patents, publications and prior art machines." White suggests that the level of ordinary skill in the art is best determined by the types of mining machines that were on the market at the time the invention was made, but he does not contest Jeffrey's statement regarding the "tools available" to a person of ordinary skill in the art. Finally, White's expert witness Flanagan and Jeffrey's expert witness Starkey agreed in many respects in their evaluation of the differences between the claimed invention and the prior art.[6] Accordingly, we will, in the interest

---

4. Interrogatory 4 to the jury reads:
   Would the difference between the mining machine as defined in Claims 1, 12 or 13 of the White '680 patent in suit and the prior art have been obvious at the time of White's alleged invention to a person having ordinary skill in the mining or mining machinery art? Two other interrogatories, numbered 9 and 10, related to unspecified new and unexpected results and functions of the claimed elements and combinations. Insofar as the *claimed* invention is concerned, they remain unspecified on this appeal. *See* note 7, *infra,* and subsequent textual discussion. White has relied only on the jury's answer to interrogatory 4 on the obviousness issue.

5. However, interrogatories to juries should be directed to facts, not to questions of law such

as obviousness, fraud, and claim interpretation, which constitute the basis for instructions to the jury to guide it in reaching its conclusions of law.

6. White argues that the court must view the evidence in the light most favorable to the party for whom the jury found and must give that party the benefit of all reasonable inferences from the evidence in his favor, citing *Lavender v. Kurn,* 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916 (1946). The flaw in this argument is that the jury was not here required to evaluate the question of obviousness in light of the invention *as claimed,* so that the rule in *Lavender* cannot aid White.

of judicial economy, consider the obviousness of claims 1, 12, and 13. *See Dual Manufacturing & Engineering, Inc. v. Burris Industries, Inc.,* 619 F.2d 660, 666–67, 205 USPQ 1157, 1163–64 (7th Cir.) (en banc), *cert. denied,* 449 U.S. 870, 101 S.Ct. 208, 66 L.Ed.2d 90 (1980).

*Claim 1*

White does not contest that Newton et al. disclose a mining machine with a shaft, a helix with cutting elements on the edge, means to drive the shaft, a rigid scavenger board opposite the vein coextensive with the helix, bearings, and a mechanical connection that moves the scavenger board laterally with the shaft. The only different argued[7] is that the Newton et al. machine does not move the helix *laterally* into the vein of coal. However, it is clear that the helical cutters at the end of the arms of the Newton et al. machine cut with their edges (as opposed to their ends) in the same manner as the machine disclosed in the White patent, which specifies that the cutter is moved "broadside into the vein of coal." Moreover, when cutting, the Newton et al. cutters move into the coal at an angle of approximately 90° to the axis of the shaft. The cutters do not move in a *straight line* into the coal, but describe an arcuate path as the two arms swing together. For this reason, White argues, the cutters are not moved *laterally* into the vein of coal. White cites no expert testimony to support this argued distinction. However, even if we were to assume that bare novelty is thus imparted to the claim 1 invention, the missing limitation is clearly taught by both Von Hippel and Seidelbach. White acknowledges that the Von Hippel miner moves laterally into the vein of coal to cut the latter, but argues that the Seidelbach machine will not move laterally into a vein of coal because it is a floor-cutting machine. However, the machine, according to the uncontradicted testimony of Starkey, will move into the face of the coal. Moreover, the patent explains that the Seidelbach machine is used to undercut the face of the coal and cause the coal located above the screw to give way and fall down. It is apparent that the cutter must move laterally into the vein of coal to accomplish this. Jeffrey's prior 120 heliminer also shows the feature of moving side-cutting helices laterally into a vein of coal.

White advances several arguments regarding unobviousness that are unconvincing. That the references fail to disclose a helix that moves laterally into coal and then vertically to dislodge coal at different elevations is irrelevant, because a vertically movable mining head is not required by the claims. That Newton et al. require screw conveyors to move the coal from the helices to the central conveyor is, likewise, irrelevant, because the claims do not rule out additional elements, such as the screw conveyor. That Jeffrey's miner enjoyed commercial success does not support an implication that the jury found that a nexus existed between such success and the claimed invention, because the Jeffrey machine included several features not disclosed or claimed in the White patent. Indeed, the designer of the Jeffrey 101MC, which is the alleged infringing device, obtained a patent on his device, the claims of which include limitations directed to features that are found in the 101MC but are neither disclosed nor claimed in the White patent. White's evidence relating to recognition of his invention by those skilled in the art as an important improvement is not directed to the machine defined by the claims in issue.

In view of the foregoing, we hold that the jury could not reasonably have concluded that the invention defined by claim 1 would have been unobvious to a person of ordinary skill in the art at the time the invention was made.

*Claim 12*

Claim 12 includes most of the limitations of claim 1. In addition, it requires that the scavenger board comprise "a pair of overlapping flat plates vertically slidably connected to each other." Newton et al. disclose a scavenger board comprising a pair of overlapping flat plates. White argues that the Newton et al. plates are not "vertically

---

**7.** White also argues several "differences" that are not found in the claim.

slidably connected" because they are connected only by a flap on one plate that is biased against the other plate. Jeffrey correctly points out that the plates in his 101MC miner are connected in the same manner—a flap at the edge of one plate is hinged and biased against the other. White cannot argue that this type of "slidably connected" plate does not meet the claim language when in a prior art reference, but does meet the claim language when in the accused device. In any event, this minor distinction, if distinction it is, is merely a design expedient. White asserts no advantages that flow from his (as opposed to Newton et al.'s) design, but, rather, merely argues that this serves to impart *novelty* to the claimed invention.

Claim 12 contains the further limitation that the scavenger board forms a trough with the floor of the mine and the vein of coal in which the helix acts as an auger to move coal toward the end of the trough. White's argument that the Newton et al. machine does not satisfy this limitation is belied by the express language of the patent: "the scrolls 34 [helices] will advance the mined material ... into the paths of the screw conveyors 85." Furthermore, White admits that Seidelbach and Von Hippel satisfy this limitation.

Thus, the prior art clearly suggests the claimed combination. Accordingly, we hold that the jury could not reasonably have concluded that the invention defined by claim 12 would have been unobvious to a person of ordinary skill in the art at the time the invention was made.

*Claim 13*

This claim differs from claim 12 slightly, requiring that the scavenger board comprise "relatively vertically movable elements." This limitation is unquestionably met by Newton et al. Claim 13 also requires that the lower edge of the blade rest on the floor of the mine, a limitation that is met by Newton et al., Seidelbach, and Von Hippel. Accordingly, this claim is invalid

---

**8.** Because our resolution of the obviousness issue and its effect on the refusal of the motions for judgments NOV is dispositive, it is

for obviousness for the same reasons that pertain to claim 12.

In view of the foregoing, the refusal of the district court to grant Jeffrey's motions for judgment notwithstanding the verdicts is reversed, and the award of damages is vacated.[8]

REVERSED.

unnecessary to reach other arguments raised by appellants.