**STRUCTURAL RUBBER PRODUCTS COMPANY, Appellant,**

v.

**PARK RUBBER COMPANY and International Metals and Machines, Inc., Appellees.**

**Appeal No. 83–1326.**

United States Court of Appeals, Federal Circuit.

Nov. 9, 1984.

William M. Wesley, Chicago, Ill., argued for appellant. With him on brief was Gregory B. Beggs, Chicago, Ill., of counsel.

James J. Flynn, Chicago, Ill., argued for appellees. With him on brief were James T. Fitzgibbon, Angelo J. Bufalino and Mary Jane Chapman, Chicago, Ill., of counsel.

Before DAVIS, SMITH and NIES, Circuit Judges.

NIES, Circuit Judge.

Structural Rubber Products Co. appeals from the judgment of the United States District Court for the Northern District of Illinois entered September 30, 1983, holding Park Rubber Company and International Metals and Machines, Inc., (collectively, Park) not liable for infringement of U.S. Patent Nos. 3,843,051 and 4,117,977, owned by appellant. The district court's judgment is based on invalidity of the patents for lack of novelty (35 U.S.C. § 102) in accordance with an answer given by a jury within a special verdict.

In answer to other specific questions, the jury found that Park infringed both patents and that neither the '051 nor '977 invention would have been obvious (35 U.S.C. § 103). With respect to '977, the jury further found that the invention had not been "on sale" or described in a printed publication more than one year before the patent application was filed and that there was no "misrepresentation" to the Patent Office.

Structural argues that the district court erred in failing to grant its motion for judgment notwithstanding the verdict because there was no evidence to support the lack of novelty defense with respect to either patent. Park argues that the judgment should be upheld because of each of the defenses it asserted at trial, including lack of novelty and those which were rejected by the jury. Park also argues that the district court held that the inventions would have been obvious, thereby rejecting the jury's negative answers on this issue.

Since we conclude: (1) that the district court erred in denying Structural's motion; (2) that no final decisions were made on the remaining issues; and (3) that other legal errors appear from the record, we vacate the judgment and remand for a partial new trial.

I.

*The Patents in Suit*

The two patents in suit are directed to highway railroad crossings having a moisture-proof traffic surface designed primarily to prevent the degradation of track subgrade. The crossing is formed by a number of rectangular tubes aligned in the direction of the train track, which are covered by a resilient waterproof lamina. The inventor named in the two patents in suit is Jacob Whitlock, an officer and principal shareholder of Structural. The first of the two patents, U.S. Patent No. 3,843,051, issued October 23, 1974, discloses a crossing formed of a middle section, which fits between the two rails, and two side sections, which run from the outer side of each rail to the main roadway. To insure a watertight seal between the rails and the crossing, the center section is oversized and must be bowed for insertion, thereby providing a compression fit as shown below:

The side portions (not illustrated above) are firmly anchored to the railroad ties at their outermost edge to prevent lateral movement and form a tight seal against the rail. To extend the crossing portions end-to-end down the track, an overlapping splicer piece is disclosed and claimed in the patent.

Claim 9, used during trial as representative of the invention, is reproduced below:

### CLAIM 9, UNITED STATES PATENT NO. 3,843,051

In a highway railway crossing having a pair of spaced substantially parallel rails secured to and supported by a plurality of transversely extending ties subtending said rails, a pair of elongated composite members arranged in abutting end-to-end relation and positionable between the rails and overlying a plurality of the rail supporting ties,

each composite member comprising a one-piece upper lamina of resilient moisture-proof material having recessed, compressible elongated side edges for resilient sealing engagement with web portions of the rails, *a plurality of elongated reinforcing elements arranged in la-*

*terally spaced substantially parallel relation* and affixed to the underside of the upper lamina,

corresponding reinforcing elements of the pair of composite members being arranged in axially aligned relation,

a joint formed between the abutting composite members being aligned with a given tie, and

*splicer means interconnecting the corresponding reinforcing elements,* the splicer means for each pair of aligned reinforcing elements extending longitudinally of the elements a substantial distance in opposite directions from the joint.

The underscored portions are significant to our decision.

The second patent, U.S. Patent No. 4,117,977, issued October 3, 1978, discloses an improvement on the invention of the '051 patent. To facilitate the manufacture and installation of the crossing, the center section is divided into two halves. As shown below, an overlapping tongue-in-groove structure is present at the center joint to prevent any potential leakage:

tongue-in-groove joint

The halves of the center section are oversized so that a compression seal is created at the junction of the halves, and between the outer edges of the halves and the rails. Representative claim 14, used at trial, is reproduced below:

### CLAIM 14, UNITED STATES PATENT NO. 4,117,977

In a highway crossing for a railroad wherein each of a pair of rails has a base section and a head section interconnected by a web section and wherein a plurality of spaced substantially parallel ties extend transversely of the rails and are secured thereto in subtending supporting relation, the combination comprising:

*at least one pair of elongated laterally-resilient gage section units adapted to be arranged in side-by-side relation intermediate the rails,* said units having corresponding elongated inner faces in abutting relation, at least one of said faces being of resilient material and the combined width of the adjacent units, prior to assembly, being slightly greater than the spacing between the web sections of said rails so as to provide, upon assembly, a resilient compressive fit between said units which forms an elongated substantially moisture-proof joint therebetween, each unit having

an elongated outer face adapted to be disposed adjacent the web section of a rail and in substantial engagement therewith and *an inner face provided with projecting segments constructed unitary with the gage section unit that interfit in an elongated tongue-ingroove relationship with corresponding segments of the adjacent unit of said pair,*

each gage section unit including a resilient moisture-proof upper lamina and reinforcing means affixed to said lamina,

the exposed surface of said lamina intermediate the outer and inner surface of a unit being adapted to define a plane substantially coplanar with the upper surfaces of said rail head sections.

Again, underscoring has been added to point out the elements of the claim which are principally in issue.

### The Trial

The case was tried before a jury on patent, unfair competition and common law fraud counts. Structural charged Park, *inter alia*, with infringement of Claims 5, 9 and 11 of the '051 patent and Claims 1, 7, 8 and 10–15 of the '977 patent.[1] Park defended principally on the ground of non-infringement, but also asserted invalidity of the patents under § 102 (lack of novelty) and under 35 U.S.C. § 103 (obviousness).

1. No appeal has been taken with respect to other counts of the complaint, each of which

was also resolved in Park's favor.

With respect to '051, Park relied on the prior art considered by the patent examiner during prosecution and, in addition, two patents not cited during prosecution, U.S. Patent No. 2,828,079 to Rennels and U.S. Patent No. 1,191,561 to Burns. With respect to '977, Park's arguments were based primarily on the '051 patent, which is prior art to '977. Park also sought to prove that the '977 invention was invalid because of asserted "on sale" and "printed publication" defenses under 35 U.S.C. § 102(b), and because of alleged misrepresentation during prosecution of '977 before the Patent and Trademark Office (PTO). The two last mentioned defenses concern an advertisement for a grade crossing by Structural in *Railway Track and Structures*, a national trade magazine, published in May 1975, more than one year prior to the filing date of the '977 application, which Structural did not bring to the attention of the PTO.

The several patent issues, which were presented to the jury in the form of questions, were the following:

Questions on Patent Claims

| | '051 Patent | | '977 Patent | |
|---|---|---|---|---|
| | Yes | No | Yes | No |
| Has the Plaintiff established by a preponderance of the evidence: | | | | |
| (1) that the Defendants infringed the patent? | X | | X | |
| (2) that the Defendants are guilty of willful infringement of the patent? | | X | | X |
| If you find infringement, then you must consider the Defendants' defenses of patent invalidity and the following questions should be answered: | | | | |
| Have the Defendants established by clear and convincing evidence: | | | | |
| (1) that the claimed invention had been "on sale" more than one year before the patent application was filed | N/A | N/A | | X |
| (2) that the claimed invention was described in a printed publication more than one year before the patent application was filed | N/A | N/A | | X |
| (3) facts establishing that the claimed invention would have been "obvious" | | X | | X |
| (4) that the claimed invention was not "novel" | X | | X | |
| (5) that there was "misrepresentation" to the Patent Office | N/A | N/A | | X |

Based on the answers of the jury indicated above, the court entered judgment in favor of Park. Structural filed a timely motion for a judgment notwithstanding the verdict (JNOV) under Rule 50(b), Fed.R. Civ.P., having previously moved for a directed verdict (Rule 50(a)). Alternatively, Structural requested a new trial (Rule 59(a)). Structural contended that there was *no* prior art reference which arguably could support the jury's verdict that either invention was not novel; that the jury's answers on the novelty, prior publication, on sale, and obviousness issues were inconsistent and showed that the jury was confused; and, finally, that the instruction and interrogatory on novelty were apparently misunderstood by the jury in a way which neither the parties nor the court anticipated.

The instruction on novelty drafted and given by the court reads as follows:

If the claimed invention is not novel, then the patent is invalid. By novel is meant that the invention should disclose something new, something which was not known at the time the invention was made. Once you have determined what the prior art is, you must compare that prior art with the invention defined by the claims of the patents in suit to determine whether the invention described by the claims is new in light of the prior art.

If the claim describes something found in the prior art, then the invention defined by the claim is not novel and the patent is invalid.

The district court denied the motion for JNOV on the novelty issue on the basis of "waiver", stating:

None of the court's instructions to the jury on the patent issues were objected to by the plaintiff. Many of the plaintiff's present complaints appear to argue with the legal standard applicable to the defense of novelty. Since the plaintiff did not object to the court's instructions on novelty, the plaintiff has waived any argument, direct or indirect, that the jury was misinformed about the law.

\* \* \* \* \* \*

I recall inquiring of the parties whether a jury instruction on the issue of novelty was appropriate in the case *because of the absence of evidence on the issue.* When the issue was raised specifically to the parties, the defendant requested the instruction and the plaintiff did not object....

In short, there has been a significant waiver during trial of the issues now raised post trial. *The novelty issue unquestionably was not a subject to which the parties devoted themselves during the trial.* But there was sufficient evidence in the record regarding prior art upon which the jury could conclude properly that the patents [sic, *i.e.*, inventions] were not novel under the court's instructions to the jury. *The issue was for the jury,* and I am not persuaded to set aside the jury's verdict or to grant a new trial. [Emphasis added.]

With respect to Park's contingent motion for JNOV or a new trial on the basis of its defenses rejected by the jury, the court denied the motions as moot, stating:

> [W]hile I am convinced that the plaintiff's patents were not valid because the claims were obvious, it would be a waste of judicial resources to reach this issue in light of the court's ruling on the plaintiff's motions.

On appeal, Park contends that the lack of novelty verdict is supported by substantial evidence, that the above statement by the court constitutes a holding by the district court of invalidity for obviousness, and that the merits of its other defenses would require a judgment in its favor.

Having noted the absence of evidence on novelty and having given Park the benefit of every reasonable factual inference, we conclude that the district court should have granted Structural's motion for judgment notwithstanding the verdict.

Structural argues that the remaining answers by the jury entitle it to a judgment that its patents are valid and infringed. For reasons discussed *infra,* however, we

decline to direct entry of judgment in favor of Structural. Rather, we remand for retrial of the issue of obviousness and such other issues as the trial court deems necessary, other than the defenses based on § 102.

## II.

Fundamental to our decision here is the premise that jury trials must be conducted in such a manner as to produce *informed* and, thus, *fair* verdicts. As Judge Schwarzer has written in a comprehensive article, "Communicating with Juries: Problems and Remedies" [2]:

> This situation confronts the bench and the bar with the challenge of ensuring that juries return verdicts conforming to both the law and the evidence. This challenge implicates all aspects of pretrial and trial management, but the critical pressure point probably is the instructing (charging) of the jury. Prevailing practices of instructing juries are often so archaic and unrealistic that even in relatively simple cases what the jurors hear is little more than legal mumbo jumbo to them. Responsibility for the shortcomings of present practices must be shared by lawyers, trial courts, and appellate courts—lawyers for submitting self-serving, excessively long and argumentative instructions, trial judges for adhering to archaic practices out of fear of being reversed, and appellate courts for elevating legal abstractions over juror understanding.

Litigants have the right to have a case tried in a manner which ensures that factual questions are determined by the jury and the decisions on legal issues are made by the court, various techniques for accomplishing that objective being available under the Federal Rules of Civil Procedure (*Railroad Dynamics, Inc. v. A. Stucki Co.,* 727 F.2d 1506, 1515, 220 USPQ 929, 938 (Fed.Cir.1984)), and under the inherent powers of the judge to control the course of a jury trial. F. James & G. Hazard, *Civil Procedure* 227–345 (1977). By the

2. 69 Calif.L.Rev. 731, 732 (1981).

same token, it is incumbent on the parties to present proper motions and/or requests to the trial court to exercise their rights under the Rules. On appeal, litigants can not expect to be heard for the first time on objections which could and should be raised in the trial court as to the conduct of the trial.[3]

As Judge Schwarzer indicates, the court's instructions to the jury, a matter which we will address in due course, are critical. However, during the course of a trial it is incumbent on the court to discern what material, factual issues are actually present in the case. This duty requires the court to have a working familiarity of the law applicable to the case before the trial begins.

It is inconceivable that litigants would expect a court to conduct a meaningful patent jury trial involving the issue of validity without working knowledge of the principles of *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545, 148 USPQ 459 (1966). Yet the record indicates specifically, not inferentially, that it was not until the arguments on the motions for JNOV that counsel indicated the importance of that case to the court. Had the trial begun with that enlightenment, we have little doubt that the court would have handled the trial in a substantially different manner.

■■■■ *Graham v. John Deere* tells us, "[T]he ultimate question of patent validity is one of law." 383 U.S. at 17, 86 S.Ct. at 693, 148 USPQ at 467. This court has concluded from *Graham*, that at both the trial and appellate level of proceedings it is the responsibility of the court to be satisfied that the party challenging validity has properly carried its burden of overcoming

the statutory presumption of validity of a patent, 35 U.S.C. § 282[4]. *Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753, 762, 221 USPQ 473, 480 (Fed.Cir.1984). Validity encompasses three "separate tests of patentability": novelty, utility and nonobviousness. *United States v. Adams*, 383 U.S. 39, 48, 86 S.Ct. 708, 15 L.Ed.2d 572, 148 USPQ 479, 482 (1966). Thus, included within the presumption of validity is a presumption of novelty, a presumption of nonobviousness and a presumption of utility, each of which must be presumed to have been met. *Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1567, 220 USPQ 97, 100 (Fed.Cir.1983).

■■■■ As this court stated in *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360, 220 USPQ 763, 771 (Fed.Cir.1984):

> To summarize on this point, § 282 creates a presumption that a patent is valid and imposes the burden of proving invalidity on the attacker. That burden is constant and never changes and is to convince the court of invalidity by clear evidence. Deference is due the Patent and Trademark Office decision to issue the patent with respect to evidence bearing on validity which it considered but no such deference is due with respect to evidence it did not consider. All evidence bearing on the validity issue, whether considered by the PTO or not, is to be taken into account by the tribunal in which validity is attacked.

With this background we turn to the issues at hand.

### III.

### *Novelty*

The reference which Park contends supports the jury's verdict that the invention

---

**3.** *See Bio-Rad Laboratories, Inc. v. Nicolet Instrument Corp.*, 739 F.2d 604, 615, 222 USPQ 654, 662 (Fed.Cir.1984). *But see American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1364, 220 USPQ 763, 774 (Fed.Cir.1984) (plain error in instruction, not objected to, required new trial).

**4.** 35 U.S.C. 282 provides in pertinent part:

> A patent shall be presumed valid. Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim. The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.

of the '051 patent lacks novelty is U.S. Patent No. 2,828,079, issued to C.H. Rennels, for a rubber railroad crossing as shown below:

Rennels '079 discloses a crossing with a one-piece rubber center section which is reinforced by a corrugated metal plate, in contrast to the "plurality of elongated reinforcing elements" called for in the '051 claims. The specification of Rennels '079, however, states:

> Those skilled in the art will also recognize that while a longitudinally corrugated reinforcing member such as shown here is preferred, it may be possible to alternately [sic] employ pipe, rods, I-beams, or other longitudinally positioned members to enable the slab to support itself on spaced ties....

Admittedly, there is no disclosure in Rennels '079 of any "splicer means" element, as required by the claims in '051, for splicing sections "down the track."

With respect to '977, Park contends that anticipation is established by Rennels '079, by the '051 patent, or by the following advertisement which is also the basis for the asserted and rejected § 102(b) defenses:

Park admits that none of the references discloses a pair of side-by-side section units intermediate the rails that interfit with a tongue-in-groove joint, thus confirming the district court's recognition that there was "an absence of evidence on the [novelty] issue."

■ A review of the evidence set out above leaves no room for doubt that Structural's attack on the judgment was well founded and that its motion for JNOV should have been granted. This court has repeatedly stated that the defense of lack of novelty (*i.e.,* "anticipation") can only be established by a single prior art reference which discloses each and every element of the claimed invention. *RCA Corp. v. Applied Digital Data Systems, Inc.,* 730 F.2d 1440, 1444, 221 USPQ 385, 388 (Fed.Cir. 1984); *Radio Steel & Mfg. Co. v. MTD Products, Inc.,* 731 F.2d 840, 845, 221 USPQ 657, 661 (Fed.Cir.1984); *Connell v. Sears, Roebuck & Co.,* 722 F.2d 1542, 1548, 220 USPQ 193, 198 (Fed.Cir.1983); *Kalman v. Kimberly-Clark Corp.,* 713 F.2d 760, 772, 218 USPQ 781, 789 (Fed.Cir.1983); *SSIH Equipment, S.A. v. U.S. Int'l. Trade Comm'n.,* 718 F.2d 365, 377, 218 USPQ 678, 688 (Fed.Cir.1983).

The statutory language mandates such an approach.[5] Section 102 speaks in terms

5. The parts of the patent statute (Title 35) pertinent to our analysis are the following (all emphasis ours):

§ 101. *Inventions patentable*
Whoever invents or discovers any *new* and useful process, machine, manufacture, or composition of matter, or any *new* and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

§ 102. *Conditions for patentability; novelty and loss of right to patent*
A person shall be entitled to a patent unless—
(a) *the invention* was known or used by others in this country, or patented or describ-

of *the invention* having been known or used by others, or patented or described in *a* printed publication. Moreover, Section 103 provides that a patent may not be obtained "though *the invention* is not *identically* disclosed or described *as set forth in Section 102*" (emphasis added). In view of Park's admissions that no single prior art reference discloses each element of any claim of either '051 or '977, the defense of invalidity for lack of novelty fails as a matter of law.

■ Park characterizes the differences over the prior art here as "insubstantial" or "clearly obvious", and argues that the inventions, therefore, are not novel under the principles set forth in the concurring opinion in *In re Arkley*, 455 F.2d 586, 590, 172 USPQ 524, 528 (CCPA 1972) and responded to in *In re Schaumann*, 572 F.2d 312, 317, 197 USPQ 5, 10 (CCPA 1978). However, Park misconstrues the import of the discussion in these opinions. While the teaching in the prior reference need not be *ipsissimis verbis*, nevertheless, there must be a teaching with respect to the entirety of the claimed invention.[6]

Park argues that missing elements may be supplied by the knowledge of one skilled in the art or the disclosure of another reference, citing *In re Foster*, 343 F.2d 980, 145 USPQ 166 (CCPA 1965). Contrary to Park's view, *Foster* holds that a statutory time bar under § 102(b) may be invoked if the invention would have been obvious from a prior art reference. *Foster* involved an obviousness rejection (§ 103) based on combining a statutory time bar (§ 102(b)) and a prior art reference. Here, Park lost on both § 103 and § 102(b) defenses and, thus, can find no support in *Foster* on which to uphold the judgment.

Park's arguments are indistinguishable from statements made by the district court in *Connell v. Sears, Roebuck & Co.*, which this court rejected as follows:

The opinion says anticipation may be shown by less than "complete anticipation" if one of ordinary skill may in reliance on the prior art "complete the work required for the invention", and that "it is sufficient for an anticipation 'if the general aspects are the same and the differences in minor matters is only such as would suggest itself to one of ordinary skill in the art.'" Those statements relate to obviousness, not anticipation. Anticipation requires the presence in a single prior art disclosure of all elements of a claimed invention arranged as in the claim. *Soundscriber Corp. v. U.S.*, 360 F.2d 954, 960, 148 USPQ 298, 301 (Ct.Cl. 1966). A prior art disclosure that "almost" meets that standard may render the claim invalid under § 103; it does not "anticipate." Though it is never necessary to so hold, a disclosure that anticipates under § 102 also renders the claim invalid under § 103, for "anticipation is the epitome of obviousness," *In re Fracalossi*, 681 F.2d 792, 215 USPQ 569 (CCPA 1982). The reverse is not true, for the need to determine obviousness presumes anticipation is lacking.

722 F.2d at 1548, 220 USPQ at 198.

Thus, Park's arguments can not substitute for the absence of evidence of an anticipatory reference.

---

ed in a printed publication in this or a foreign country, *before the invention* thereof by the applicant for patent, or....

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, *more than one year prior to the date of the application* for patent in the United States, or

  \*    \*    \*    \*    \*    \*

§ 103. *Conditions for patentability; non-obvious subject matter*

A patent may not be obtained though the invention is *not identically disclosed or described* as set forth in section 102 of this title,

if the *differences* between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

**6.** This case presents no issue of equivalency, which under the standard of *Tate Engineering, Inc. v. United States*, 477 F.2d 1336, 1342, 175 USPQ 115, 119 (Ct.Cl.1973), might result in a holding of anticipation.

Returning to the instruction on novelty, the court did not authorize the combining of references or supplementing a prior disclosure with knowledge in the art to find lack of novelty. From having read the instructions in their entirety, we conclude that the jury was confused, perhaps by the novelty instruction being preceded by an obviousness instruction which did refer to skill in the art with no clear distinction being drawn, to a layman, between them. The jury could have been misled, as well, by the unsupportable instruction that the invention is not novel if the claim describes "something found" in the prior art.

However that may be, the trial court erred in giving the jury the question of novelty on which there was *no evidence* arguably showing identity with a prior art disclosure and in failing to grant Structural's motion. As this court stated in *Nestier Corp. v. Menasha Corp.*, 739 F.2d 1576, 1579, 222 USPQ 747, 750 (Fed.Cir.1984): "In a jury trial, a court should not instruct on a proposition of law about which there is no competent evidence." *See also E.I. Du-Pont de Nemours v. Berkley & Co.*, 620 F.2d 1247, 1258–1261, 205 USPQ 1, 8–11 (8th Cir.1980) (Markey, C.J., sitting by designation).

Park argues that Structural "waived" its right to a correct ruling on novelty on the theory that Structural never advanced, in connection with its motions, any position on novelty contrary to the instruction which, therefore, is controlling. Structural's position on the law, however, from at least the time of its motion for directed verdict, has been that "there is *no single reference* that *anticipates* the claims of the patents." (Emphasis added.) Contrary to Park's view, we do not agree that Structural's motion did not address "novelty" by failing to use that word.

■ Structural's motion was clearly correct as a matter of law and fact. There was no issue of novelty for the jury because of the absence of evidence, as the court acknowledged. The issue could and, in this case, should have been taken from the jury. *Galloway v. United States*, 319 U.S. 372, 63 S.Ct. 1077, 87 L.Ed. 1458 (1943); F. James & G. Hazard, *Civil Procedure* 291 (1977). Once the issue was submitted, and an unsupportable answer returned which was the sole basis for the judgment, the court failed to utilize the opportunity of granting Structural's motion for JNOV to correct the error.

■ The failure of a district court to grant a motion for directed verdict or JNOV, when that action is required, compels this court to set aside a judgment which is erroneous when the correct law is applied to undisputed facts. *See Envirotech v. Al George*, 730 F.2d at 762, 221 USPQ at 480; *White v. Jeffrey Mining Machinery Co.*, 723 F.2d 1553, 1458–59, 220 USPQ 703, 706 (Fed.Cir.1983). *See also* 9 Wright and Miller, *Federal Practice and Procedure: Civil*, § 2558 (1971) and cases cited therein, particularly, *Dual Mfg. & Engineering, Inc. v. Burris Industries, Inc.*, 619 F.2d 660, 663, 205 USPQ 1157, 1160–61 (7th Cir.), *cert. denied*, 449 U.S. 870, 101 S.Ct. 208, 66 L.Ed.2d 90, *reh'g denied*, 449 U.S. 1027, 101 S.Ct. 599, 66 L.Ed.2d 490 (1980) for analysis of Fed.R. Civ.P. 51 waiver. As succinctly stated in Wright, *Law of Federal Courts*, § 95, at 635 (4th Ed.1983): "[T]he trial judge does not sit to approve miscarriages of justice."

In view of the absence of evidence to support the legal conclusion of invalidity based on lack of novelty of the '051 and '977 inventions, the judgment resting on that ground cannot stand.

## IV.

### *Obviousness and Alternative Defenses*

■ Park reasserts its alternative attacks on the validity of Structural's patent claims, and its defense of non-infringement, as grounds for upholding the judgment or for a new trial. While ordinarily a party may assert any ground raised below in support of a judgment, we are not faced with a situation here where the merits of these issues may be reached on appeal. Because the district court found it unnecessary to rule on Park's post-trial motions,

Park's alternative defenses were not finally resolved at the trial level. While Park argues that obviousness was resolved in its favor by the district court, we disagree. The previously quoted statement made by the trial judge, that in her opinion the inventions of '051 and '977 were obvious, does not rise to the level of a formal ruling, thereby making obviousness an alternative basis for the judgment. We can review only final decisions, not passing comments of the court. *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 894, 221 USPQ 669, 673 (Fed.Cir.1984).

When we look to what the court actually did, we find a specific ruling that the issues, other than "novelty", were moot. Thus, the judgment before us does not subsume the remaining patent issues, and, in effect, we are being asked by Park to rule on these matters in the first instance, which we must decline to do.

Park's position with respect to these issues does, however, fall within Fed.R. Civ.P. 50(d):

> (d) ... If the motion for judgment notwithstanding the verdict is denied, the party who prevailed on that motion may, as appellee, assert grounds entitling him to a new trial in the event the appellate court concludes that the trial court erred in denying the motion for judgment notwithstanding the verdict. If the appellate court reverses the judgment, nothing in this rule precludes it from determining that the appellee is entitled to a new trial, or from directing the trial court to determine whether a new trial shall be granted.

Park "prevailed" below on Structural's motion JNOV. Since we reverse, and in ac-cordance with Rule 50(d), determine that appellee is entitled to a new trial, we return to the subject of trial management and proper instructions for the guidance of the court and the parties in the conduct of further proceedings.

## V.

### Roles of Judge and Jury

Concerns have been expressed by the patent bar that a jury trial creates a black box into which patents are thrown and emerge intact or invalid by an unknown and unknowable process.[7] The trial of a patent case, in which the judge and jury perform appropriate functions and which provides a record that clearly delineates the basis for the decision, not only would allay these concerns, but is also the right of litigants.[8]

The statutory standard of patentability rests on a constitutional grant of power.[9] The desire for uniformity in application of that standard, to the end that inventions within its bounds are protected and those outside the metes are struck down, is the recurrent theme in *Graham*. By mandating that validity is a question of law, we understand the Supreme Court to mean that in a bench trial the decision by the trial court with respect to the application of the statute to the facts on the issue of obviousness is a legal decision fully reviewable on appeal. *Jervis B. Webb Co. v. Southern Systems, Inc.*, 742 F.2d 1388, 1393, 222 USPQ 943, 946 (Fed.Cir.1984). The introduction of a jury can not change the *nature* of the obviousness decision. It continues to be a legal issue for the court. Indeed, the role of a trial court should not

---

**7.** *See,* for example, *Second Judicial Conference of the Federal Circuit,* —— F.R.D. —— (April 26, 1984). Similar concerns have been expressed by the bar and by the judiciary in other types of cases as well, for example, by Judge Frank in his classic opinion, *Skidmore v. Baltimore & O.R. Co.,* 167 F.2d 54 (2nd Cir.1948).

**8.** As previously indicated, the right is not self-executing or inalienable. A failure to object to instructions or utilize other available procedures can result in waiver.

**9.** Article I, Section 8 provides, as to patents for inventions:

> The Congress shall have Power ....
>
>   *   *   *   *   *   *
>
> To promote the Progress of ... useful Arts, by securing for limited Times to ... Inventors the exclusive Right to their ... Discoveries.

*See* Rich, *Principles of Patentability,* Part II, 28 G.W.L.Rev. 393, 394–97, *reprinted in* 42 JPOS 75, 76–80 (1960).

be significantly different in a patent jury trial from its role in a patent bench trial with respect to legal issues. On appeal, the standard of review applied by an appellate court to factual issues is affected by the different type of trial. Findings of fact by the jury are more difficult to set aside (being reviewed only for reasonableness under the substantial evidence test) than those of a trial judge (to which the clearly erroneous rule applies).[10] But the standard of review of the conclusion on obviousness remains the same—it is a question of law. Thus, it is the duty of the appellate court to be satisfied that the law has been correctly applied to the facts regardless of whether the facts were determined by judge or jury.

The problem of assigning and fulfilling the responsibilities of the jury vis-a-vis the judge is not unique to patent jury trials. Since long prior to the creation of this court, the other circuits have had to wrestle with the problem in widely divergent types of court litigation.

The foundation, of course, for jury trials in civil litigation is the Seventh Amendment to our Constitution:

> In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.

U.S.Const.Amend. VII.

The views expressed on the meaning of this right have ranged from endorsing the absolute sanctity of a right to have a jury decide the law as well as the facts, to no right to a jury trial where the issues are complex.[11]

The Supreme Court has rejected the first extreme (*Sparf v. United States*, 156 U.S. 51, 15 S.Ct. 273, 39 L.Ed. 343 (1895)), and has, at most, suggested the latter as a conceivably determinative factor (*Ross v. Bernhard*, 396 U.S. 531, 538 n. 10, 90 S.Ct. 733, 738 n. 10, 24 L.Ed.2d 729 (1970)).[12]

The historical background and subsequent developments on the right to a jury are found in both the majority and dissenting opinions in *Galloway v. United States*, 319 U.S. 372, 63 S.Ct. 1077, 87 L.Ed. 1458 (1943), which addressed the question of whether the directed verdict practice, a practice not known in 1791, offended the Seventh Amendment. In sum, the court stated:

> The Amendment did not bind the federal courts to the exact procedural incidents or details of jury trial according to the common law in 1791, any more than it tied them to the common-law system of pleading or the specific rules of evidence then prevailing. Nor were "the rules of the common law" then prevalent, including those relating to the procedure by which the judge regulated the jury's role on questions of fact, crystallized in a fixed and immutable system. On the contrary, they were constantly changing and developing during the late eighteenth and early nineteenth centuries. In 1791 this process already had resulted in widely divergent common-law rules on procedural matters among the states, and between them and England. And none of the contemporaneous rules regarding judicial control of the evidence going to juries or its sufficiency to support a verdict had reached any precise, much less final, form. In addition, the passage of time has obscured much of the procedure which then may have had

---

**10.** *See SSIH Equipment S.A. v. U.S. Int'l Trade Comm'n*, 718 F.2d 365, 381–82, 218 USPQ 678, 691–93 (Fed.Cir.1983) (Nies, J., supplemental opinion).

**11.** *See* Cooper, *Directions for Directed Verdicts*, 55 Minn.L.Rev. 903 (1971); James, *Right to a Jury Trial in Civil Actions*, 72 Yale L.J. 655 (1963). For a discussion of conflicting theories in the context of patent jury trials, see Ropski,

*Constitutional and Procedural Aspects of the Use of Juries in Patent Litigation*, 58 JPOS 609 (1976); Rose, *1982–1983 Patent Law Handbook*, § 4.3, at 151–152 (1982).

**12.** *See In re Japanese Electronic Products Antitrust Lit.*, 631 F.2d 1069 (3rd Cir.1980) (due process may preclude trial by jury in complex case).

more or less definite form, even for historical purposes.

This difficulty, no doubt, accounts for the amorphous character of the objection now advanced, which insisted, not that any single one of the features criticized, but that the cumulative total or the alternative effect of all, was embodied in the Amendment. The more logical conclusion, we think, and the one which both history and the previous decision here support, is that the Amendment was designed to preserve the basic institution of jury trial in only its most fundamental elements, not the great mass of procedural forms and details, varying even then so widely among common-law jurisdictions. [Footnotes omitted.]

319 U.S. at 390–392, 63 S.Ct. at 1087–1088.

With this view, that the Seventh Amendment right to a jury embodies flexible procedural concepts, some trial courts have been innovative in managing jury trials to ensure that the respective roles of jury and judge are performed by the proper entity and that the results are based on informed and fair decisions. To aid comprehension, complex cases have been tried a step at a time, receiving the jury's answer to one phase of a case, and only then continuing on to the next.[13] Schwarzer, *supra* note 2, at 757. Masters have been employed by courts (under Fed.R.Civ.P. 53(e)(3)) to explain technology to the jury or make findings on specific issues which are then read to the jury. *See,* Williams and Thierstein, *Use of Masters in Litigation,* 12 AIPLA Quarterly Journal 227 (1984), Kaufman, *Masters with the Federal Courts, Rule 53,* 58 Colum.L.Rev. 452 (1958); *International Nickel Co. v. Ford Motor Co.,* 166 F.Supp. 551, 119 USPQ 72 (S.D.N.Y.1958).

Some circuits have undertaken to provide specific guidance to their district courts in drafting the types of instructions which will focus the jury's efforts on the factual issues, and, indeed, some require that instructions be given in mandatory alternative form in certain instances. *See, e.g., Wilk v. American Medical Assoc.,* 719 F.2d 207, 219 (7th Cir.1983).

■ This court has counselled district courts in appeals to us that specific answers from the jury on factual issues are desirable, *American Hoist,* 725 F.2d at 1361, 220 USPQ at 771, *Railroad Dynamics,* 727 F.2d at 1516, 220 USPQ at 939, and has praised courts which have provided comprehensive opinions in ruling on motions for JNOV. *Id.* at 1513, 220 USPQ at 936. The decision of an appellate court is likely to be better focused when it is assisted in this manner. Otherwise the task of review may be unnecessarily comprehensive. *See, e.g., DuPont v. Berkley,* 620 F.2d at 1247, 205 USPQ at 8. Nevertheless, it must be left to the sound discretion of the trial court what form of verdict to request of a jury. *Weinar v. Rollform, Inc.,* 744 F.2d 797, 809–10, 223 USPQ 369, 376 (Fed.Cir.1984). Thus, we have held that a trial court may, with proper instructions, present a patent case to a jury for a general verdict encompassing all of the issues of validity and infringement, *Railroad Dynamics,* 727 F.2d at 1514–15, 220 USPQ at 937–38, or may ask for a general answer on one or more specific legal issues, such as obviousness, a practice not specifically provided for in the Federal Rules. *Id.* at 1516, 220 USPQ at 938–39.

■ The key to the performance of the respective roles of judge and jury in resolution of legal issues are the court's instructions. As stated in *Perkin-Elmer,* 732 F.2d at 893, 221 USPQ at 673:

The particular findings the jury must make before it can reach a verdict are controlled by the court's instructions to the jury.

---

13. *See, e.g., In re Yarn Processing Patent Validity Litigation,* 472 F.Supp. 170, 173, 205 USPQ 758, 761 (Fla.1979), where bench trials were conducted on purge of patent misuse and on equitable defenses, and separate jury trials were conducted on validity under §§ 102 and 103 and on damages, thus, not only assisting the jury, but also properly reserving equitable matters to the court. Regarding the latter point, *see Beacon Theatres v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1958).

However, before submitting the issue of obviousness to the jury, the court must consider whether there is an underlying factual dispute on this issue. If there is none, the issue should not be given to the jury since the application of the law to undisputed facts is for the court.

The decisions in other circuits on the proper handling of the issue of obviousness in a jury trial have been divergent, some seemingly adopting the premise that the obviousness issue inherently presents underlying factual issues for the jury. (*See* 2 Chisum, *Patents*, § 5.04[3][d] (1984)). This view apparently stems from a misunderstanding of the familiar quotation from *Graham*:

> While the ultimate question of patent validity is one of law, *A. & P. Tea Co. v. Supermarket Corp.*, *supra*, [340 U.S. 147] at 155 [71 S.Ct. 127 at 131, 95 L.Ed. 162] the § 103 condition, which is but one of three conditions, each of which must be satisfied, lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevance. See Note, Subtests of "Nonobviousness": A Nontechnical Approach to Patent Validity, 112 U.Pa.L. Rev. 1169 (1964).
>
> This is not to say, however, that there will not be difficulties in applying the nonobviousness test. What is obvious is not a question upon which there is likely to be uniformity of thought in every given factual context.

383 U.S. at 17–18, 86 S.Ct. at 693–694, 148 USPQ at 467.

From this passage, instructions are typically drafted in general terms charging the jury to consider the above factual inquiries (which is, in large part, a paraphrasing of the statute, 35 U.S.C. § 103) and *decide* the issue of obviousness. Indeed, the instruction appears in standard forms as the epitome of a correct instruction. We do not so regard it.

The *Graham* quotation directs an approach to the obviousness analysis, but the factual inquiries identified in *Graham* do not mandate issues for a jury. 3 White, *Patent Litigation: Procedure & Tactics*, § 8.03[4], at 8–60.3 (Sept. 1983 Cum.Supp.). Rather, the evidence in each particular case determines what facts, if any, are actually disputed.

That the parties fervently dispute the ultimate conclusion of obviousness is not enough to raise a factual question. *Petersen Manufacturing Co. v. Central Purchasing, Inc.*, 740 F.2d 1541, 1548, 222 USPQ 562, 567 (Fed.Cir.1984). *See also, Union Carbide Corp. v. American Can Co.*, 724 F.2d 1567, 1574–76, 220 USPQ 584, 590–91 (Fed.Cir.1984) and *Chore-Time Equipment, Inc. v. Cumberland Corp.*, 713 F.2d 774, 778–81, 218 USPQ 673, 675–77 (Fed.Cir.1983) (summary judgment granted in both cases despite dispute over conclusion of obviousness); and *Barmag Barmer Maschinenfabrik AG v. Murata Machinery Ltd.*, 731 F.2d 831, 834–35, 221 USPQ 561, 563–64 (Fed.Cir.1984) (summary judgment granted despite demand for jury trial).

The actual factual issue on obviousness may concern no more than what a single item of prior art discloses. Moreover, the factual issue over differences between the prior art and the claimed invention may begin with, or depend upon, an issue of claim interpretation, a matter for the court to decide and to make known to the jury by its instructions.[11] The issue of

---

**14.** *Coupe v. Royer*, 155 U.S. 565, 577, 15 S.Ct.

199, 204, 39 L.Ed. 263 (1895); *Bates v. Coe*, 8

obviousness may also require a preliminary decision by the court on whether a particular reference may properly be relied on as prior art, *e.g.*, whether it is a "printed publication" within the meaning of § 102(a) or (b). *General Motors Corp. v. U.S. Int'l Trade Comm'n.*, 687 F.2d 476, 482, 215 USPQ 484, 489 n. 11 (CCPA 1982). Having made these decisions, the trial court must then determine what factual issues remain in the case and, by its instructions, should direct the jury's attention to disputed factual issues which, when resolved, lead inexorably, in the opinion of the district court, to a determination of obviousness or nonobviousness.

### Instructions

■ Turning to the instructions given in this case, we note initially that as part of the instruction on patent validity, the trial court erroneously charged the jury as follows on the statutory presumption of validity:

The presumption of validity extends only to the record before the examiners in the patent and trademark office, where that record, called the file wrapper, discloses that certain information or documents were considered by the examiner during the prosecution of the application important to the patent. There is a presumption that the examiner found patentable differences between that information, or those documents so considered, and the invention claimed in the patent application.

But as to information or documents which you find from the file wrapper not to have been considered by the examiner, and which you find to teach an invention closer to or more like the invention claimed in the patents in suit than are the inventions disclosed in the information or documents considered by the examiner, *the presumption of validity disappears*. [Emphasis added.]

For reasons stated in *American Hoist* (see Part II, *supra* ), the giving of this instruction was plain error. While the instruction did not prejudice Structural before the jury on the issue of obviousness, it would be error if the court, on a motion for JNOV, failed to afford the patentee the benefit of the statutory presumption and was, thereby, led to a wrong decision on this issue. In view of the comment of the court on the obviousness of both inventions, we instruct that, on remand, the court's analysis be corrected in this respect.

The instruction on obviousness given in this case was as follows:

A patent may not be obtained if the differences between the claimed invention and the prior art are such that the claimed invention would have been obvious at the time it was made to a person having ordinary skill in the art of the subject matter of the claimed invention.

The prior art includes earlier patents, any additional information admitted by the patent application to be prior art, and prior inventions described in printed publications more than one year before the application for the patent or before the actual invention was made by the person filing the application. Under the law an inventor is presumed to have knowledge of all the prior art relevant to his claimed invention.

If you find that the differences between the products recited in any claim in the patents in suit and what is taught

---

Otto 31, 38–39, 98 U.S. 31, 38–39, 25 L.Ed. 68 (1878) ("In construing patents, it is the province of the court to determine what the subject-matter is upon the whole face of the specification and the accompanying drawings."); *Winans v. Denmead,* 56 U.S. (15 How.) 330, 338, 14 L.Ed. 717 (1853) ("[T]wo questions arise. The first is, what is the thing patented; the second, has that thing been constructed, used or sold by the defendants. The first is a question of law, to be determined by the court, construing the letters patent, and the description of the invention and specification of claim annexed to them. The second is a question of fact, to be submitted to a jury."); *Silsby v. Foote,* 55 U.S. (14 How.) 218, 14 L.Ed. 394 (1852) ("The construction of the claim was undoubtedly for the court.").

On the other hand, claim construction, dependent on resolution of a factual dispute, does present a jury question. *See, e.g., McGill, Inc. v. John Zink Co.,* 736 F.2d 666, 672, 221 USPQ 944, 948 (Fed.Cir.1984).

by the prior art would have been such that the claimed invention taken as a whole would have been obvious to a person skilled in the art at the time the claimed invention of each patent in suit was made, then the subject of the claim is said to be obvious from the prior art.

If you find obviousness as described in these instructions, then the claims for that invention must be found invalid.

■ The error in this type of instruction on obviousness is not that the court has misstated the law, but that, as indicated above, the court has abdicated its responsibility to inform the jury of how the statute applies to the particular case.

■ As stated in 9 Wright & Miller, *Federal Practice and Procedure: Civil*, § 2556, at 658 (1971) on the subject of proper instructions: "To repeat statutory language is not sufficient unless its meaning and application to the facts are clear without explanation."

"Obviousness", as used in patent law, is not a term readily understood by a jury. Indeed, the term is overladen with layman's meanings different from its legal connotation, which can only add confusion to the decision-making process by the most conscientious jury. In this case such confusion is demonstrated by the jury's anomalous answers that there is no prior art, that the inventions were not obvious, but that the inventions were lacking in novelty.

■ We join other courts that have held that the duty of a trial court in any jury trial is to give instructions which are meaningful, not in terms of some abstract case, but which can be understood and given effect by the jury once it resolves the issues of fact which are in dispute.[15] *See, e.g., Choy v. Bouchelle*, 436 F.2d 319 (3rd Cir.1970); *Marshall v. Isthmian Lines, Inc.*, 334 F.2d 131, 138 n. 15 (5th Cir.1964). A reasoned resolution of the basis for up-

holding or invalidating patents is mandated by *Graham*. Unlike a verdict on negligence to which the jury is expected to contribute the sense of the community, a decision on patent validity does not benefit from the jury's communal sense of patentability. A patentee, as well as an infringer, is entitled to have its position judged only by the standard which Congress has written into the statute. Thus, a party has a right (upon proper requests) to have the trial court delineate in its instructions what facts in the particular case must be found to reach a conclusion of obviousness and what facts require a contrary answer. *Accord, Roberts v. Sears, Roebuck & Co.*, 723 F.2d 1324, 1341–42, 221 USPQ 504, 519 (7th Cir.1983). On appeal, this court can then concentrate on those factors which the trial court indicated in its instructions were key to the obviousness decision and will not be forced to engage in shadowboxing the presumptions and assumptions underlying the decision which is necessary when the trial court does no more than read or paraphrase the statute as an instruction. Without the benefit of the trial court's reasoning in particularized instructions, the appeal takes on the character of an initial determination with respect to application of the law to the facts, rather than a review.[16]

*Special Verdicts*

Because of the many factual variables which may enter into the question of obviousness, and to an even greater extent into a general verdict, it is a formidable task to draft unobjectionable instructions which lay out alternative mandatory general verdicts if specific facts are found. However, Fed.R.Civ.P. 49(a), provides a viable alternative:

Special Verdicts. The court may require a jury to return only a special verdict in the form of a special written finding *upon each issue of fact.* In that event

**15.** *See* 9 Wright & Miller, *Federal Practice and Procedure: Civil*, § 2556, at 659–60 n. 3 (1971).

**16.** A motion for JNOV is designed to challenge the sufficiency of the evidence underlying factual findings. No particular quantum of evidence

is necessary to establish obviousness. A party may accept the jury's presumed factual findings and still argue that obviousness has or has not been established.

the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate. The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict. [Emphasis added.]

Resort to Rule 49(a) greatly simplifies the instructions which must be given and clearly separates the respective functions of judge and jury.[17] As stated in *Moore's Manual* § 22.08[1], at 22-78 to 22-79 (1983):

Use of the special verdict eliminates the necessity for and use of complicated instructions on the law, which are a normal concomitant of the general verdict. Complicated instructions have always been ludicrous and unfair: ludicrous in that only the naive can believe lay juries are capable of absorbing all the legal elements involved; unfair in that lack of comprehension leads to confusion and ultimately, injustice. When the special verdict is used the court should give to the jury only such explanation and instructions as it deems necessary to enable the jury to make intelligent findings upon the issues of facts submitted. [Footnotes omitted.]

The utilization of Rule 49(a) appears to us as a particularly useful tool in conserving judicial resources and in effectuating the Congressional policy expressed in the patent laws.

## VI.

We have not attempted in this case to review the record to determine what factual issues are actually disputed on the issue of obviousness. It may be that on remand the parties will be able to agree substantially on the facts so that it will not be necessary to impanel a jury. With respect to infringement, we leave it to the trial judge to determine whether or not to accept the jury's finding or to retry this issue as well.

Accordingly, we *reverse* the holding of invalidity for lack of novelty, *vacate* the judgment, and *remand* for further proceedings consistent herewith.

REVERSED, VACATED, AND REMANDED

---

17. *See Skidmore v. Baltimore & O.R. Co.*, 167 F.2d at 66; *See also* Ropski, *supra* note 7, at 678.