59 CCPA

### Application of Albert SIMON.
### Patent Appeal No. 8689.

United States Court of Customs and Patent Appeals.

June 8, 1972.

John L. Seymour, New York City, attorney of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Fred W. Sherling, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and MALETZ, Judge, United States Customs Court, sitting by designation.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection under 35 U.S.C. § 103 of claims 1, 2, and 23–25 in appellant's application entitled "Process and Apparatus for Making Plates," serial No. 351,758, filed March 13, 1964, but claiming the benefit of the March 15, 1963, filing date of appellant's French application PV 928,147. We affirm.

*The Subject Matter Claimed*

Appellant's claims recite methods of continuously making curved, rigid articles from composite webs of flexible fabric, glass fibers, and hardenable polymer resins. Appellant terms these articles "plates." They appear to be large struc-

tural shapes rather than tableware. Claim 1, subdivided for clarity, is representative:

1. A method of continuously forming shaped plates which comprises

applying to a moving first flexible fabric band[1] a layer of glass fibers,

applying a layer of hardenable polymerizable resin to the layer of glass fibers on the band,

applying a second flexible fabric band[1] to the layer of polymerizable resin and fibers to form a composite web,

bending the so-formed web on a curved support, to an arcuate shape about an axis transverse to its length while

polymerizing and hardening the polymerizable resin on the curved support, and

cutting a length from the hardened, arcuate web to form a plate.

The other claims add the step of bending the web about its *longitudinal* axis prior to bending it about its transverse axis, and claims 24 and 25 recite that the resin is thermosetting and that it is hardened by heating.

Appellant's specification describes an embodiment of his invention shown in Fig. 1:

FIG. 1

(A5911)

Surface 22 of the "cylinder"[2] at the right is the "curved support" of claim 1, 25 is an oven, partitioned for efficient control of the thermo-hardening process,

and 18 is the composite web formed of pellicle 11, glass fibers 14, polymerizable resin 15, and pellicle 17. Before it reaches the cylinder, the web passes between rollers 19, 20 which may be offset and staggered to impart the desired shape, such as corrugations extending longitudinally of the web, and the surface of the cylinder is shaped to support whatever shape the rollers have imparted.

Appellant's specification concedes that the first three steps of the process of claim 1 were known in the prior art, and at oral argument his counsel stressed repeatedly that the step of polymerizing the sheets while they are still on the cylinder is the heart of the invention. Accordingly, we will focus primarily on that feature of the claims.

### The References

| | | |
|---|---|---|
| Chamberlain | 2,734,245 | Feb. 14, 1956 |
| Finger et al. (Finger) | 3,071,180 | Jan. 1, 1963 |
| Graff et al. (Graff) | 3,226,458 | Dec. 28, 1965 (filed Dec. 28, 1961) |
| Rasmussen (Denmark) | 72,628 | published June 11, 1951 |
| Steffenino (France) | 969,204 | published Dec. 15, 1950 |

Steffenino is the principal reference. Appellant's counsel requested clarification of an initial, rather broad rejection employing Steffenino, and in response the examiner specified that he was "relying on Figures 2, 4, and 5 and the disclosure relating thereto [in] the Steffenino patent wherein a curved sheet is formed from a flat panel having no corrugations."

Steffenino teaches that a sheet of "fibrous material, with or without synthetic resin binders, adhesive or agglomerating varnishes," may be "obtained in a continuous manner by introducing it between at least two rotating, calendering or rolling rolls or cylinders, and applying a pressure with heating to the temperature necessary to assure the cure or polymerization of the resinous binder."

---

1. The specification states that appellant's "flexible fabric band" is, in practice, "a pellicle of material such as regenerated cellulose * * *."

2. Actually, the surface of the "cylinder" may be corrugated, so it is not necessarily a true cylinder.

Fig. 4, below, shows the sheet "emerging still hot and flexible from the last pair of cylinders" and being bent on a curved support 10 to an arcuate shape about an axis transverse to its length. Steffenino does not specifically teach that the hardened, arcuate web should be cut into lengths, but it does refer to the product of the process as "elements or panels," and, since the production process is stated to be "continuous," the sheet would have to be cut to produce such elements.

[A5910]

Finger discloses apparatus for continuously producing corrugated panels of thermosetting resin and glass fibers sandwiched between flexible films. The corrugations are placed in the web of resin, fibers, and flexible film by bending it about its longitudinal axis prior to thermosetting the resin and the web is hardened while still on the corrugation-producing guides. Thereafter, the "hard, strong and solid mass" is cut into lengths. However, Finger does not suggest bending the corrugated web about its transverse axis.

Chamberlain discloses apparatus capable of progressively bending a continuous strip of "a plastic such as a clay composition" to produce "a succession of individual articles of complex form"—i. e., bent both longitudinally and transversely.

Graff discloses a method of continuously producing transversely corrugated sheets of laminated plastic materials which includes (1) forming the corrugation by pressing the uncured, flexible laminate into appropriate crenelations

on the surface of a rotating drum and (2) curing the laminate sufficiently while on the surface of the drum so that it retains its molded shape while being conveyed to a final curing furnace.

Rasmussen discloses a "machine for treating pleated paper so that the pleating is longitudinally curved * * *." The paper is first pleated and then bent to an arcuate shape on a curved support.

### The Rejection

The examiner rejected claim 1 as being unpatentable under 35 USC 103 over Steffenino in view of Finger, Graff, and Chamberlain. It was his position that Steffenino teaches applicant's "method of continuously making curved panels from resin impregnated fibrous material by first forming the panel and then curving or bending it on a curved support to an arcuate shape about an axis transverse to its length," that it teaches hardening during the shaping step since the resin is apparently cooling as it passes over the curved support 10 in Fig. 4, but that, if it does not, Finger and Graff do, and that Finger and Chamberlain teach how to cut the hardened, shaped panels into sections of appropriate length.

The examiner rejected the remaining claims on two theories, so far as we are concerned. First, he rejected them on the above references plus Rasmussen on the theory that Rasmussen "teaches that it is old to corrugate panels and then to bend the panels to an arcuate form to achieve a decorative effect." Second, relying only on the references applied to claim 1, he reasoned that, "since Finger teaches that reinforced panels may be corrugated[,] it would be obvious to use such reinforced panels in the arcuate shaping step of Steffenino and then to cut into sections as taught by Finger or Chamberlain."

The board affirmed the rejections for the reasons stated by the examiner. In response to appellant's argument that

"certain of the references shape different materials and are therefore in non-analogous arts," the board stated that it "regard[ed] prior art processes of shaping materials in analogous arts even though the specific materials may in some instances be different."

## OPINION

 We affirm the rejection of claims 1, 2, and 23–25 on the basis that the combination of the four primary references, resulting in a web bent about both its transverse and longitudinal axes, would have been obvious even absent Rasmussen. In so doing, we recognize that Steffenino and Finger each teaches bending in only one direction and that neither reference expressly teaches bending the web in the other direction as well. However, the question in a section 103 case is not only what the references expressly teach, but what they would collectively suggest to one of ordinary skill in the art, and we are persuaded that, at least prima facie, a person of ordinary skill in the art at that time, having those two references (both of which are clearly from exactly the same art) before him, In re Antle, 58 CCPA 1382, 1387, 444 F.2d 1168, 1171 (1971), would have had no difficulty in devising a process within the scope of appellant's narrower claims. In particular, Finger clearly teaches the step of polymerizing the sheets while they are still on the guides which impart the curvature, and we agree that Steffenino impliedly does so as well. Appellant has offered no objective evidence to rebut this tentative, or prima facie, conclusion on our part, and we therefore accept the Patent Office case for obviousness.

For the foregoing reasons, the decision of the board is affirmed.

