**Michael J. BADALAMENTI, Plaintiff,**

v.

**DUNHAM'S, INC., Kinney Shoe Corporation, and Hyde Athletic Industries, Inc., Defendants.**

**Civ. A. No. 85–71040.**

United States District Court, E.D. Michigan, S.D.

Feb. 19, 1988.

---

Ernie L. Brooks, Robert C.J. Tuttle, Brooks & Kushman, Southfield, Mich., for plaintiff.

Ronald L. Hofer, Harness, Dickey & Pierce, Birmingham, Mich., for defendants; David Wolf, John L. Welch, Wolf, Greenfield & Sacks, P.C., Boston, Mass., of counsel.

## MEMORANDUM OPINION AND ORDER

FEIKENS, District Judge.

### I. *Introduction*

Plaintiff Michael Badalamenti obtained a patent for "a traction device for shoes." U.S. Patent No. 4,335,529, issued June 22, 1982 (plaintiff's patent). After obtaining the patent he contacted athletic shoe manufacturers to interest them in making his shoe. None were. Plaintiff also confronted various manufacturers who were, in his opinion, infringing his patent. He granted licenses to three manufacturers, but is not currently receiving royalty payments from any of the three.

Plaintiff filed his complaint on March 7, 1985, against Hyde Athletic Industries, Inc., a Massachusetts shoe manufacturer, and Dunham's Inc. and Kinney Shoe Corp., two local shoe retailers who sold Hyde's shoe. Hyde defended on behalf of the other two defendants. Plaintiff's complaint

alleges that the defendant Hyde's "Monster" athletic shoe infringes his patent. 35 U.S.C. § 271.

I have jurisdiction pursuant to 28 U.S.C. § 1338(a).

Defendants moved for summary judgment in August 1985. I granted their motion, entering my memorandum opinion and order February 4, 1986. I concluded that defendant Hyde's shoe did not literally infringe plaintiff's patent and that the doctrine of file wrapper estoppel prevented a finding of infringement under the doctrine of equivalents. Plaintiff appealed March 13, 1986. The U.S. Court of Appeals for the Federal Circuit vacated my order for summary judgment. *Badalamenti v. Dunham's Inc., et al.*, Nos. 86–1024 and 86–1064, slip op. (Fed.Cir. Dec. 18, 1986) [809 F.2d 789 (Table)]. While upholding my determination of no literal infringement, the U.S. Court of Appeals stated that the plaintiff might be entitled, under the doctrine of equivalents, to recapture certain patent claims I found he had given up in prosecution. Slip op. at 6. The U.S. Court of Appeals remanded the case to this court for further fact finding to determine the scope of plaintiff's claims.

In conducting discovery after remand, having previously sought production of evidence of any prior negotiations of plaintiff with others and receiving no adequate response thereto, defendant Hyde independently determined that plaintiff and his attorneys had negotiated with Nike, an athletic shoe manufacturer, some two years earlier regarding possible infringement by Nike and licensing of plaintiff's invention. The Nike negotiations concerned pertinent prior art, in the form of two shoes manufactured by Nike, the "Astrograbber" and the "Waffle Racer".

Defendants filed a motion for dismissal with prejudice and for attorney fees and costs under Fed.R.Civ.P. 37, claiming that the plaintiff should have produced this information in response to the request for production of documents filed two years earlier. After an evidentiary hearing I granted defendants' motion as to sanctions and denied it as to dismissal with prejudice.

I have the determination of the sanctions amount under consideration.

Partially because of the newly discovered evidence, I am now presented with the issue of whether plaintiff's patent is invalid because it is obvious.

The case has been tried to a jury in accordance with plaintiff's request.

At the close of plaintiff's presentation of evidence to the jury, defendant Hyde moved for a directed verdict upon the ground that plaintiff's patent is obvious, and thus invalid under 35 U.S.C. § 103. Defendant bases his motion upon the evidence of the prior art introduced by plaintiff.

The prior art which plaintiff introduced is (1) United States Patent No. 4,194,310, issued March 25, 1980 to Bowerman (Bowerman patent); (2) Nike Astrograbber athletic shoe; (3) Nike Waffle Racer shoe; (4) United States Patent No. 2,878,592, issued March 24, 1959 to Cisko, Jr. (Cisko patent); (5) United States Patent No. 2,179,942, issued November 14, 1939, to Lyne (Lyne patent); and (5) United Kingdom Patent No. 407,499, issued March 22, 1934, to Lotus, Ltd. (Lotus patent).

Plaintiff also had two expert witnesses testify, Alsaf Ali and Thomas Montgomery.

It became obvious to me during the trial that plaintiff introduced the evidence of prior art partly upon a mistaken assumption. His position was that the question of obviousness invariably presents a fact question for the jury, and cannot be decided by directed verdict. This is incorrect as a matter of law, as the U.S. Court of Appeals for the Federal Circuit has stated.

## II. *Directed Verdict*

■ Plaintiff contends that the issue of obviousness is one for the jury, and not one for the court. It is well settled, however, that although the issue of obviousness often rests upon factual determinations, it does not invariably raise a question for the jury.

### A. The Issue of Obviousness Is A Question of Law

The issue of obviousness, although based on factual inquiries, is a question of law

which is to be decided by the trial court. *Sakraida v. Ag Pro, Inc.*, 425 U.S. 273, 280, 96 S.Ct. 1532, 1536, 47 L.Ed.2d 784, 189 U.S.P.Q. 449, 452 (1976); *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1966); *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1566–68, 1 U.S.P.Q.2d 1593, 1595–97 (Fed.Cir.1987), *cert. denied*, — U.S. ——, 107 S.Ct. 2187, 95 L.Ed.2d 843. While the *Graham* analysis of obviousness is generally considered factual, the U.S. Court of Appeals for the Federal Circuit has stated that the inquiry is "factual" only to the extent that there are disputed facts. If none exist, the entire question of obviousness is one for the court. *Structural Rubber Products Co. v. Park Rubber Co.*, 749 F.2d 707, 721, 223 U.S.P.Q. 1264, 1274–75 (Fed.Cir.1984).

Plaintiff is thus not automatically entitled to have the factual inquiries underlying obviousness decided by the jury. That the parties dispute the ultimate conclusion of obviousness is not sufficient to raise a fact question. *Id.* As the U.S. Court of Appeals for the Federal Circuit has stated:

> [B]efore submitting the issue of obviousness to the jury, the court must consider whether there is an underlying factual dispute on this issue. If there is none, the issue should not be given to the jury since the application of the law to undisputed facts is for the court.

*Structural Rubber Products*, 749 F.2d at 721, 223 U.S.P.Q. at 1275.

Even if there are disputed facts, "a verdict should still be directed if the *undisputed facts* demonstrate, as a matter of law, that the patent in suit is invalid." *Brunswick Corp. v. Champion Spark Plug Co.*, 689 F.2d 740, 752, 216 U.S.P.Q. 1, 10 (7th Cir.1982) (emphasis in original).

I find that there are no factual disputes concerning the scope and content of the prior art, the level of ordinary skill in the art, and the secondary considerations. What disputes exist result from claim interpretation, which is a matter of law for the court. *Panduit*, 810 F.2d at 1567–68, 1 U.S.P.Q.2d at 1597.

### B. Legal Standards for Reaching a Directed Verdict

The U.S. Court of Appeals for the Federal Circuit has discussed the legal standard for deciding motions for directed verdicts and judgments notwithstanding the verdict on the issue of patent validity. *Quaker City Gear Works, Inc. v. Skil Corp.*, 747 F.2d 1446, 1454–55, 223 U.S.P.Q. 1161, 1166–67 (Fed.Cir.1984), *cert. denied*, 471 U.S. 1136, 105 S.Ct. 2676, 86 L.Ed.2d 694 (1985), *quoting Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 220 U.S.P.Q. 193 (Fed.Cir.1983). In *Connell* the U.S. Court of Appeals for the Federal Circuit stated the applicable legal standard as follows:

> Under these guidelines, a court must: (1) consider all the evidence; (2) in a light most favorable to the non-mover; (3) drawing reasonable inferences favorable to the non-mover; (4) without determining credibility of witnesses; and (5) without substituting its choice for that of the jury between conflicting elements in the evidence. ... If, after following those guidelines, the court is convinced upon the record before the jury that reasonable persons could not reach or could not have reached a verdict for the non-mover, it should grant the motion for directed verdict or for JNOV.

722 F.2d at 1546, 220 U.S.P.Q. at 197.

In addition, the patent holder enjoys a statutory presumption that the patent is valid. 35 U.S.C. § 282. The party challenging the validity of the patent can overcome this presumption only by clear and convincing evidence to the contrary. *Panduit*, 810 F.2d at 1569–70, 1 U.S.P.Q.2d at 1598–99 and *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1534, 218 U.S.P.Q. 871, 875 (Fed.Cir.1983). When the party challenging the patent has met the burden of overcoming this presumption of validity with clear and convincing evidence, the court should declare the patent invalid. *Panduit*, 810 F.2d at 1570, 1 U.S.P.Q.2d at 1599. Thus, I start with the presumption that Badalamenti's patent is nonobvious.

The court must also give deference to the Patent and Trademark Office's (PTO) decision to issue a patent with respect to

evidence that it considered. *Structural Rubber Products,* 749 F.2d at 714, 223 U.S.P.Q. at 1269, *quoting American Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1360, 220 U.S.P.Q. 763, 771 (Fed. Cir.1984). No such deference is due with respect to evidence it did not consider. *Id.* Thus, while the court is to give "appropriate consideration and due weight" to the PTO's decision, its decision is not controlling nor is it binding on the court. *Interconnect Planning Corp. v. Feil,* 774 F.2d 1132, 1139, 227 U.S.P.Q. 543, 548 (Fed.Cir. 1985). On the basis of the evidence before the courts, the courts can and do decide differently from the PTO examiner. *Tyler Refrigeration v. Kysor Indus. Corp.,* 777 F.2d 687, 690, 227 U.S.P.Q. 845, 847 (Fed. Cir.1985).

While the PTO examiner did consider the prior art which is before me, I note that the PTO did not have the actual Nike Astrograbber or the Nike Waffle Racer shoes. It considered only printed publications showing those shoes. In addition, the PTO stated that the photocopies of the publications showing the shoes were not clear (Reexamination No. 90/001266, p. 3 (Plaintiff's Exhibit 3)). Based on the unclear photocopies the PTO stated that it "appears" that the cited publications did not show Badalamenti's running shoe sole. Moreover, plaintiff did not brief nor did the PTO discuss the Bowerman patent in either the prosecution or the reexamination.

With due deference to the PTO and keeping in mind plaintiff's presumption of validity, here, where there are no disputed facts, I can decide the issue of the validity of plaintiff's patent in a motion for a directed verdict.

### III. *Obviousness*

The U.S. Constitution authorizes Congress "To promote the Progress of ... useful Arts, by securing for limited Times to ... Inventors the exclusive Right to their ... Discoveries." Art. 1, § 8, cl. 8. This clause is "both a grant of power and a limitation." *Graham,* 383 U.S. at 5, 86 S.Ct. at 687. Patent law sets out the limitations in three conditions for patentability: novelty, utility, and nonobviousness. 35

U.S.C. §§ 101–103. Section 103 on nonobviousness reads in relevant part:

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. . . .

As the legislative history makes clear, although an invention may be "new", it may still be obvious if the difference between the prior art and the invention is not great enough to warrant the monopoly granted by patent law. S.Rep. No. 1979, 82d Cong., 2d Sess. (1952); H.R.Rep. No. 1923, 82d Cong., 2d Sess. (1952), U.S.Code Cong. & Admin.News 1952, p. 2394 *quoted in Graham,* 383 U.S. at 14–15, 86 S.Ct. at 692; *cf. Union Carbide Corp. v. American Can Co.,* 724 F.2d 1567, 1575, 220 U.S.P.Q. 584, 591 (Fed.Cir.1984).

The Supreme Court has enunciated the test for obviousness under section 103 in *Graham v. John Deere Co. of Kansas City:*

While the ultimate question of patent validity is one of law, the § 103 condition, which is but one of three conditions, each of which must be satisfied, lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy.

383 U.S. 1, 17, 86 S.Ct. 684, 694 (1966) (citation omitted).

## IV. *The Required Analysis*

After interpreting the claims of the patent at suit, obviousness is determined by performing the factual inquiries required by *Graham*, taking into consideration any expert testimony on the issue.

### A. Claim Interpretation

Preceding the factual inquiry required by *Graham* the court must interpret the claim: what is the invention claimed? *Panduit*, 810 F.2d at 1567–68, 1 U.S.P.Q.2d at 1597. The two claims at issue are claims 1 and 6. Claim 1 reads:

> A running shoe comprising an outer side, an inner side, a sole, a first traction surface, and a second traction surface, wherein: said first traction surface and said second traction surface are associated with and disposed on the inner side and the outer side, respectively, of the upper portion of said shoe: each of said traction surfaces extends along a side of said shoe from about the forward portion of the heel to about the region where the toe area commences; and each of said traction surfaces is disposed above said sole of the shoe at an acute angle; whereby, when said shoe is rotated about a horizontal axis, at least one of said traction surfaces is brought into contact with the ground surface.

Plaintiff's Patent, col. 4, 11. 12–14.

> Claim 6 reads:

> The shoe of claim 1 wherein the traction surfaces comprise a plurality of nubs protruding from the traction surface.

*Id.* at 11. 37–39.

The language of plaintiff's claims at suit are straightforward. I find that plaintiff claims an angled traction surface composed of nubs. The traction surfaces are located above the bottom of the sole at an acute angle to it and are located along both sides of the shoe from the forward portion of the heel to the toe area. They provide traction when the shoe is rotated horizontally. In addition, plaintiff's and his expert witness's testimony have confirmed this meaning (Badalamenti, Tr. 37–38 & 75–77; Ali, Tr. 273, 303, 312).

### B. The Graham Analysis

In considering the obviousness issue, the U.S. Court of Appeals for the Federal Circuit requires the *Graham* analysis. Graham suggests factual inquiries in four areas: (1) ascertaining the scope and content of the prior art; (2) determining the differences between the prior art and the claims in issue; (3) determining the level of ordinary skill in the pertinent art; and (4) considering any secondary considerations or objective evidence. In light of the answers to these inquiries, the court must address the question of whether the differences would have been obvious to one reasonably skilled in the pertinent art at the time of plaintiff's invention. *Graham*, 383 U.S. at 17, 86 S.Ct. at 693.

### 1. *Scope and Content of the Prior Art*

■ An analysis of the record shows that the parties have not contested the scope or content of the prior art. The prior art is that cited in the prosecution and the reexamination, introduced by plaintiff. It is: (1) the Bowerman patent; (2) Nike Astrograbber shoe; (3) Nike Waffle Racer shoe; (4) the Cisko patent; (5) the Lyne patent; and (5) the Lotus patent. My discussion of the prior art follows.

### a. Bowerman

The Bowerman patent is for an "athletic shoe for artificial turf with molded cleats on the sides thereof." Bowerman Patent, pg. 1. The invention claimed is for an athletic shoe for artificial turf or other hard surfaces "which employs molded cleats of resilient material on the bottom of the shoe and on both sides thereof for greater traction." *Id.* at col. 2, 11. 5–8. The preferred embodiment for the side cleats is:

> [A] cover strip 20 of resilient material having a plurality of second cleats 22 molded integral therewith is attached to opposite sides of the shoe upper as well as around the toe portion and heel portion of such upper. These second cleats 22 may each have a polygon-shaped ground engaging surface 24 and greatly improve traction when the athletic shoe is used for sports such as baseball, foot-

ball or soccer requiring lateral movement and rapid changes in direction during which the shoe is partially twisted or rolled sideways so that such second cleats engage the artificial turf or other hard surface. Patent col. 3, 11. 15–26.

The function of the side cleats is to provide traction during lateral movement or changes in direction:

The second cleats 22 on the side of the shoe upper provide no cushioning during normal straight ahead running, but are *primarily for providing additional traction during lateral movement or changes in running direction.*

*Id.* at 11. 46–50 (emphasis added).

The specific invention claimed by Bowerman is:

An athletic shoe comprising: ... a cover strip extending partially over the outer surface of said shoe upper around the toe portion and along the opposite sides of the shoe upper and having a plurality of second cleats molded integral with said cover strip on the opposite sides of said shoe upper.

*Id.* at col. 4, 11. 50–66.

b. Nike Astrograbber and Waffle Racer

The soles of the Nike Astrograbber and the Nike Waffle Racer ("the Nike shoes") are the same, only the uppers, which are not relevant to the patent in suit, differ (the Astrograbber is a football shoe for use on astroturf, the Waffle Racer is a cross-country shoe).

The Nike shoes show an angled traction device on the side of the shoes which provides traction when the shoe is rotated. The Nike shoes have a wrapped sole. The sole wraps around the sides of the shoe in the front portion—the ball and toe areas—of the shoe. The sole, including the wrapped portion, has square projections or cleats. The cleats on the wrapped portion of the sole provide traction when the shoe is rotated as the person changes direction. Both plaintiff's expert witnesses, Ali and Montgomery, testified on cross-examination that the Astrograbber provides traction when the shoe is rotated laterally (Ali, Tr. 295–96 & 306; Montgomery, Tr. 297).

Ali also testified that it provides traction throughout a thirty to forty-five degree angle (Tr. 297).

c. Cisko Patent

The Cisko patent is for a baseball shoe with spikes to prevent slipping during base running. Cisko shows spikes located on the left side of both left and right shoes, located above the bottom of the sole so that they do not engage the ground unless the shoe is rotated. The spikes engage the ground upon rotation of the shoe during base running, and prevent lateral slipping. The drawing shows that the spikes are at an acute angle relative to the sole or ground. Patent, figs. 4 & 5.

d. Lyne Patent

The Lyne patent is for an attachment for a golf shoe, to provide traction and balance during the player's stroke. Lyne shows a traction device, or "pivot face", extending beyond the normal inner edge of the sole. The traction device is a continuation of the sole curving upward and outward from it. The traction device is provided with studs which prevent sideways slipping. Patent, p. 2, col. 2, 11. 52–56. As the player pivots during his swing the shoe rotates and the studs on the traction device engage the ground, providing traction. The drawing shows that the studs are at an acute angle relative to the sole or ground. Patent, figs. 5 & 6.

e. Lotus Patent

The Lotus patent is for "shoes for sports wear", more particularly for playing golf. The Lotus patent shows a beveled or angled side sole at approximately forty-five degrees relative to the sole bottom. Studs are attached perpendicularly to the angled surface so that they also project at approximately forty-five degrees. Lotus patent, 11. 68–77. The side studs are located on both sides of the shoe, either on the ball of the foot or around the whole shoe. The purpose of the side studs is to prevent the shoes from slipping when they are turned on their edges.

The prior art discussed above is undisputed. The parties do dispute the interpre-

tation of the prior art's claims. This is a matter for the court, to which I now turn.

### 2. Differences between the Prior Art and Invention in Suit

The second inquiry required by *Graham* is a determination of the differences between the prior art and the claims of the patent at suit. I find that the differences between plaintiff's claims and the prior art are negligible at best, and as a matter of law do not attain the difference which is afforded protection under patent law.

In comparing plaintiff's invention and what the prior art teaches, it is important to make clear what plaintiff does *not* claim in his patent. Plaintiff does not claim one acute angle over another for the side traction surface. Neither does he claim a certain transition between the sole and the side traction surface, such as curved versus angled. Nor does he claim a certain disposition (straight versus curved) of the surface to which the nubs are attached (the drawings show a straight surface). He does not claim any specific size, shape, or disposition of the cleats on the side traction surface (Tr. 125–26).

Plaintiff simply claims an acutely angled traction surface composed of cleats or nubs along the sides of the shoe from forward of the heel to the toe area. This claim must be compared to the prior art in determining the differences between them.

The single most relevant prior art is the Bowerman patent. The differences between the Bowerman patent and the plaintiff's invention are minimal or nonexistent. The Bowerman patent shows an angled traction device composed of nubs along the sides of the shoe. The purpose of Bowerman's patent is to provide greater traction for quick turning laterally. The purpose of plaintiff's patent is to provide lateral traction. Bowerman accomplishes this by cleats along the sides of shoe. Plaintiff's patent accomplishes this by nubs or cleats along the sides of the shoe. The Bowerman patent achieves its purpose as the side cleats engage the surface when the shoe is twisted or rolled sideways. Plaintiff's patent achieves its purpose as the traction surface along the sides of the shoe is brought into contact with the ground when the shoe is rotated. In short, Bowerman shows plaintiff's claimed invention—nubs or cleats on an acutely angled traction surface along both sides of the shoe to provide traction when the shoe is rotated.

The only difference plaintiff could cite between Bowerman and his patent was the acute angle of the side traction surface (Tr. 500). Plaintiff relies solely upon the drawing of the Bowerman patent as his support for the contention that Bowerman, and consequently the prior art, does not teach a traction device at an acute angle (Ali, Tr. 325; Brooks, Tr. 500). This reliance is misplaced. A fair reading of the claims and specifications of Bowerman shows that it teaches an angled traction surface, and that the drawing showing a traction surface at a right angle to the sole or ground surface is in error. Furthermore, the other prior art teaches an angled traction surface located above the sole.

■ Obviousness is to be determined not only by what the prior art expressly teaches, but by what it would suggest. "The question of obviousness depends, furthermore, on 'not only what the references expressly teach, but what they would collectively suggest to one of ordinary skill in the art.'" *Leinoff v. Louis Milona & Sons, Inc.*, 726 F.2d 734, 739, 220 U.S.P.Q. 845, 848–49 (Fed.Cir.1984), *quoting In re Simon*, 461 F.2d 1387, 1390, 174 U.S.P.Q. 114, 116 (C.C.P.A.1972).

I find that the angled traction surface is, if not a necessary implication of Bowerman, at the very least clearly suggested by it. The specifications state that in the preferred embodiment for the side cleats the side cleats engage the surface and provide traction upon partial lateral rolling or twisting:

> [The side cleats] greatly improve traction when the athletic shoe is used for sports ... requiring lateral movement and rapid changes in direction during which the shoe is *partially twisted or rolled sideways* so that such second cleats engage the ... surface.

Bowerman patent col. 3, 11. 21–26 (emphasis added).

A patentee cannot escape the teaching of a prior art patent based upon an interpretation of the drawing if the specifications are otherwise clear. *Cf. Ziegler v. Phillips Petroleum Co.,* 483 F.2d 858, 869, 177 U.S.P.Q. 481, 488 (5th Cir. 1973), *cert. denied,* 414 U.S. 1079, 94 S.Ct. 597, 38 L.Ed.2d 485, *quoting Edward Valves, Inc. v. Cameron Iron Works, Inc.,* 286 F.2d 933, 942 (5th Cir.1961), *cert. denied,* 368 U.S. 833, 82 S.Ct. 55, 7 L.Ed.2d 34 ("It is well settled that the claims delineate the scope of protection afforded by a patent, not the specific embodiments shown in patent drawings.") This is so especially where, as here, the drawing appears to be in error.

I find that in Bowerman the cleats can engage the surface upon partial lateral movement only if they are at an acute angle to the ground, and not at a nearly right angle as shown in the drawing. Plaintiff's expert witness Ali testified that the side cleats at a right angle as shown in the drawing would only engage the ground when the shoe was turned completely on its side (Tr. 254). As depicted in the drawing, the side cleats would not be functional.

Even if Bowerman did not teach an acutely angled traction surface, other prior art—the Nike shoes and the Lotus, Lyne, and Cisko patents—teaches an angled traction surface. The Nike shoes show the wrapped portion of the sole disposed at an acute angle to the sole and the ground. The Lotus patent shows an angled side sole at a forty-five degree angle to the ground. The Cisko patent shows spikes located at an acute angle. The Lyne patent as well shows a traction device at an acute angle.

The prior art also shows the angled traction device on both sides of the shoe. The Nike shoes show a wrapped sole on both sides of the shoe on the ball and toe area, and Bowerman shows cleats on both sides all around the shoe. In addition, the Cisko patent, with cleats located on the left sides of the shoes for base running, would suggest to anyone of ordinary skill that if you wanted traction when running to the right, you would merely put spikes on the opposite side of the shoe.

In summary, a comparison of the prior art with plaintiff's invention shows that the difference between them is slight.

### 3. *Level of Ordinary Skill in the Art*

Regarding the third inquiry required by *Graham,* the parties have not disputed the level of ordinary skill in this case. Defendant has agreed that plaintiff's expert witnesses establish an appropriate level of skill. *See Custom Accessories, Inc. v. Jeffrey–Allan Indus., Inc.,* 807 F.2d 955, 962–63, 1 U.S.P.Q.2d 1196, 1201 (Fed.Cir.1986); *Stratoflex,* 713 F.2d at 1538, 218 U.S.P.Q. at 878–79.

Plaintiff's expert Ali has some college education and has worked nineteen years in the sporting goods industry, for a number of years supervising the development and production of athletic shoes (Tr. 265–66). Plaintiff's expert Montgomery has a bachelor of science degree in mechanical engineering and has worked in the athletic shoe trade for nine years (Tr. 380–81).

I find that a person possessing an applicable level of ordinary skill in the art is one with some college education and who has worked in the athletic shoe trade.

### 4. *Secondary Considerations*

The fourth inquiry required by *Graham* is a consideration of objective evidence or secondary considerations. Secondary considerations are useful to guard against slipping into hindsight, *Graham,* 383 U.S. at 36, 86 S.Ct. at 703; and must be considered when present, *Pentec, Inc. v. Graphic Controls Corp.,* 776 F.2d 309, 315, 227 U.S.P.Q. 766, 770 (Fed.Cir.1985), and *Stratoflex,* 713 F.2d at 1538–39, 218 U.S.P.Q. at 879. There must be a nexus established between the merits of the claimed invention and the evidence of secondary considerations if the evidence is to be given substantial weight indicating nonobviousness. *Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.,* 776 F.2d 281, 305 n. 42, 227 U.S.P.Q. 657, 673 n. 42 (Fed.Cir.1985), *cert. denied,* 475 U.S. 1017, 106 S.Ct. 1201, 89 L.Ed.2d 315; *Simmons Fastener,* 739 F.2d

at 1575, 222 U.S.P.Q. at 746; *Stratoflex,* 713 F.2d at 1539, 218 U.S.P.Q. at 879.

 In the present case the parties presented evidence on commercial success and commercial acquiescence. Neither indicates nonobviousness. Badalamenti's shoe has not been commercially successful. He has not marketed the shoe itself, only confronted alleged infringers. Nor does the evidence of commercial acquiescence indicate nonobviousness. In the six years plaintiff has promoted his invention he has obtained only three licenses despite contacting "many" manufacturers (Tr. 503 & 91). The few licenses plaintiff has obtained do not indicate nonobviousness.[1] Additionally, plaintiff has not shown a nexus between the merits of his invention and the licenses of record. *Stratoflex,* 713 F.2d at 1539, 218 U.S.P.Q. at 879.

Thus I find that the evidence of secondary considerations does not indicate nonobviousness.

### C. Expert Testimony

The court may consider an expert witness's testimony but it is not bound by the opinion of expert witnesses on the issue of obviousness. *Petersen Mfg. Co. v. Central Purchasing, Inc.,* 740 F.2d 1541, 1547–48, 222 U.S.P.Q. 562, 566–67 (Fed.Cir.1984); *Pederson v. Stewart–Warner Corp.,* 536 F.2d 1179, 1180–81, 192 U.S.P.Q. 20, 22 (7th Cir.1976), *cert. denied,* 429 U.S. 985, 97 S.Ct. 505, 50 L.Ed.2d 597.

Only Ali testified as to obviousness. His opinion was that plaintiff's shoe was not obvious in the light of the prior art. However, Ali stated that he had "briefly glanced" at the prior art references, some seventy patents (Plaintiff's Ex. 30), given to him by plaintiff (Tr. 274, 314–15).

I find that Ali's testimony does not indicate that plaintiff's invention is nonobvious.

### V. Conclusion

I conclude that as a matter of law plaintiff's invention would have been obvious to one reasonably skilled in the pertinent art at the time of its invention.

A useful starting point for determining the issue of obviousness is Judge Rich's image in *In re Winslow. Union Carbide,* 724 F.2d at 1576, 220 U.S.P.Q. at 591. In *In re Winslow,* Judge Rich stated:

> We think the proper way to apply the 103 obviousness test to a case like this is to first picture the inventor as working in his shop with the prior art references— which he is presumed to know—hanging on the walls around him.

365 F.2d 1017, 1020, 53 C.C.P.A. 1574, 1578 (1966).

Imagining myself in a workshop with the prior art hanging on the walls around me, a comparison of plaintiff's patent with the prior art leads me to the conclusion that the minds of reasonable men could not differ that plaintiff's patent is obvious.

Plaintiff claims an angled traction surface composed of nubs disposed at an acute angle above the bottom of the sole along both sides of the shoe from the forward portion of the heel to the toe area. It provides traction when the shoe is rotated horizontally. Plaintiff's invention is obvious in light of the Bowerman patent showing an athletic shoe with side cleats disposed at an angle above the sole in order to provide traction when turning. Other prior art also shows an angled traction surface above the sole of the shoe—the Nike shoes and the Lotus, Cisko, and Lyne patents. The prior art further shows the side traction surface disposed from the forward portion of the heel to the toe area. Such a disposition would have been obvious in light of the Nike shoes and the Bowerman and Cisko patents.

---

**1.** As stated by Judge Frank in *Kleinman v. Kobler,* 230 F.2d 913, 914 (2d Cir.1956), *cert. denied,* 352 U.S. 830, 77 S.Ct. 44, 1 L.Ed.2d 51: [W]e see no significance in the fact, found by the trial judge, that "four manufacturers, including Schick and Remington–Rand, Inc., two of the largest manufacturers, have procured licenses from the plaintiff." These are matters about which judges must not be too naive: To take a license, calling for small royalty payments, frequently involves less expense than prolonged litigation; besides, if the licenses are few, the licensees may deem it desirable to share a monopoly which will endure while the patent-owner frightens off other users.

The differences between the prior art and plaintiff's patent do not amount to the degree necessary to be afforded protection under the patent laws. The differences are minimal at best. Considering all the evidence, in a light most favorable to plaintiff, drawing all reasonable conclusions in plaintiff's favor, keeping in mind the presumption of nonobviousness and giving deference to the Patent and Trademark Office's decision, I find that defendant has presented clear and convincing evidence that plaintiff's patent is obvious. I find that the minds of reasonable men could not differ regarding the obviousness of plaintiff's patent. The differences between plaintiff's invention and the prior art would have been obvious to one reasonably skilled in the art at the time.

Accordingly, IT IS ORDERED that defendant's motion for a directed verdict be GRANTED.

IT IS SO ORDERED.