Michael J. **BADALAMENTI**, Plaintiff,

v.

**DUNHAM'S, INC., Kinney Shoe Corporation, and Hyde Athletic Industries, Inc., Defendants.**

Civ. A. No. 85–71040.

United States District Court,
E.D. Michigan, S.D.

May 8, 1989.

Ernie L. Brooks, Robert C.J. Tuttle, Brooks & Kushman, Southfield, Mich., for plaintiff.

Ronald L. Hofer, Harness, Dickey & Pierce, Birmingham, Mich., David Wolf, John L. Welch, Wolf, Greenfield & Sacks, P.C., Boston, Mass., of counsel, for defendants.

## MEMORANDUM OPINION AND ORDER

FEIKENS, District Judge.

Plaintiff initiated this patent infringement case on March 7, 1985, alleging defendants had violated his patent for a "traction device for shoes." U.S. Patent No. 4,335,529, issued June 22, 1982. I granted summary judgment for the defendants on February 4, 1986. I held that there was no literal infringement and that the doctrine of file wrapper estoppel prevented a finding of infringement based on the doctrine of equivalents. *Badalamenti v. Dunham's, Inc.,* No. 85–71040, mem. op. at 3–6, 1986 WL 8785 (E.D.Mich. Feb. 4, 1986). The United States Court of Appeals for the Federal Circuit reversed and remanded for the determination of certain facts. *Badalamenti v. Dunham's, Inc.,* 809 F.2d 789 (Fed.Cir.1986).

## I. *Discovery Violation*

While conducting discovery after remand, defendants found that plaintiff had omitted information defendants had requested in discovery before summary judgment. I held an evidentiary hearing on defendants' resulting motion for dismissal with prejudice, and for attorney's fees and costs. In my Memorandum Opinion of December 17, 1987, I held that under Rule 37(d) of the Federal Rules of Civil Procedure, sanctions should be imposed against plaintiff and plaintiff's attorney. *Badalamenti v. Dunham's, Inc.,* 118 F.R.D. 437 (E.D.Mich.1987). I denied the motion to dismiss.

I will briefly reiterate the basis for my decision to impose Rule 37(d) sanctions upon plaintiff and his attorney. In April, 1985, defendants noticed Badalamenti's

deposition. This notice requested the production of, *inter alia,* all communications between plaintiff and other persons, and all other documents, relating to infringement charges by plaintiff, replies to such charges, and offers to license Badalamenti's patent. *See Badalamenti v. Dunham's, Inc., id.* at 438–439. Despite this discovery request, and similar deposition questions, plaintiff did not disclose the fact that he was in the midst of negotiations with Nike at that time.

From March to August of 1985, plaintiff, through his current counsel, negotiated with Nike, Inc. ("Nike"). He charged that Nike infringed his patent, and offered to license Nike. When Nike responded that its shoes, as well as other prior art, invalidated Badalamenti's patent, plaintiff's counsel terminated discussions with Nike and no longer pressed Badalamenti's patent claims. *Badalamenti, supra,* 118 F.R.D. at 438. Badalamenti did not produce this correspondence with Nike, as defendants requested. At his May 10, 1985 deposition, Badalamenti repeatedly refused to answer questions regarding his negotiations, on the advice of his counsel, Ernie L. Brooks. *Deposition of Michael J. Badalamenti* at 80–83, attached as Exhibit Q to *Defendants' Motion for Dismissal with Prejudice and for Attorney's Fees Pursuant to Rule 37, Fed.R.Civ.P.*

Plaintiff did not disclose these discussions with Nike, or produce the documents bearing on them, until two years later, after defendants had independently discovered the Nike negotiations. Plaintiff and his attorney violated the Federal Rules of Civil Procedure when:

> On May 21, 1985, plaintiff filed a response [to defendants' request for production of documents] in which he promised to search for and produce "all relevant, non-privileged documents." However, plaintiff did not disclose that he had discussions with Nike, nor did he produce the documents bearing on the Nike talks, until May 15, 1987. Plaintiff never moved for a protective order regarding the Nike documents.

*Badalamenti, supra,* 118 F.R.D. at 439.

I find that these failures to disclose the ongoing Nike communications constituted willful bad faith breaches of the Federal Rules of Civil Procedure by both Badalamenti and his counsel. As I stated in my previous opinion:

> Here, plaintiff's and plaintiff's counsel's behavior was inexcusable: they must have realized that the Nike documents fit clearly within the category of material described in defendants' request; they failed to produce, or even disclose the existence of, the Nike documents; and they made no objection, timely assertion of privilege, or motion for a protective order. Such behavior is intolerable because it defies the Federal Rules of Civil Procedure and threatens the effectiveness of our discovery rules.

*Badalamenti, supra,* 118 F.R.D. at 440.

Therefore, I hold Badalamenti and his counsel, Brooks, jointly and severally liable for Rule 37(d) sanctions, as contemplated by the language of that rule. *Cf. Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1979) (In discussing the Court's inherent powers, the Court stated, "If a court may tax counsel fees against a party who has litigated in bad faith, it certainly may assess those expenses against counsel who wilfully abuse judicial process." Footnote and citation omitted.)

## II. *Directed Verdict*

Although I held on December 17, 1987 that Rule 37(d) sanctions should be imposed, I took the issue of the amount of sanctions under advisement until after the impending jury trial. On January 21, 1988, I directed a verdict for the defendants. *Badalamenti v. Dunham's, Inc.,* 680 F.Supp. 256 (E.D.Mich.1988). This directed verdict was affirmed on appeal. The information plaintiff withheld regarding the Nike patents contributed to my decision to direct a verdict for defendants based on the obviousness of plaintiff's patent.

In directing this verdict, I found that plaintiff's device failed to meet a condition of patentability contained in 35 U.S.C.

§ 103, nonobviousness. This statute states in relevant part that:

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter are such that the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains....

35 U.S.C. § 103.

I held that given the prior art contained in Nike's patents, as well as in four other patents, the differences between this prior art and Badalamenti's device would have been obvious to one reasonably skilled in this art at the time of Badalamenti's invention. *Badalamenti, supra.* Plaintiff's claimed invention was an angled traction surface composed of nubs for athletic shoes. *Id.* at 261. "The traction surfaces are located above the bottom of the sole at an acute angle to it and are located along both sides of the shoe from the forward portion of the heel to the toe area. They provide traction when the shoe is rotated horizontally." *Id.*

In granting the directed verdict, I stated that, "[t]he single most relevant prior art is the Bowerman patent. The differences between the Bowerman patent and the plaintiff's invention are minimal or nonexistent." *Id.* at 263. However, the differences between the Nike patents and Badalamenti's device were also negligible:

The Nike shoes show an angled traction device on the side of the shoes which provides traction when the shoe is rotated.... The cleats on the wrapped portion of the sole provide traction when the shoe is rotated as the person changes direction. Both plaintiff's expert witnesses, Ali and Montgomery, testified on cross-examination that the Astro-grabber [a Nike patent] provides traction when the shoe is rotated laterally (citation omitted).

*Id.* at 262.

While the information which plaintiff withheld regarding the Nike patents was not the sole basis of my directed verdict, it went directly to the issue of obviousness. Plaintiff concealed information bearing directly on the validity of his patent, the basis of his suit.

### III. *Rule 37(d) Sanctions*

On January 30, 1989, after the directed verdict was affirmed, I held another hearing on the amount of Rule 37(d) sanctions to be imposed. I now take up this issue of the amount of Rule 37(d) sanctions to impose, jointly and severally, upon plaintiff Badalamenti and his attorney, Ernie L. Brooks.

In relevant part, Rule 37(d) provides:

In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure unless the court finds that the failure was substantially justified or that the other circumstances make an award of expenses unjust.

I must now decide what part of defendants' reasonable expenses were caused by plaintiff's failure to disclose the Nike correspondence. Defendants submitted the affidavit of their attorney, David Wolf, along with detailed information regarding their costs in this case. Wolf asserted that defendants would have incurred no expenses after January 1, 1987 if plaintiff had disclosed the Nike information when requested. *Affidavit of David Wolf* at 4. Wolf assumed that defendants would have moved for summary judgment on the basis of the Nike prior art, rather than on the doctrine of equivalents; that I would have granted such a motion; and that this grant would have been affirmed at approximately the same time the actual grant was reversed. Defendants seek all expenses incurred after January 1, 1987, approximately $348,220. *Id.* at 7. This figure includes defendants' costs through November, 1988.

In his response to Wolf's affidavit, Badalamenti conceded only that defendants were entitled to the fees they incurred in their own investigation of the Nike commu-

nication, "something less than $175." *Badalamenti's Response to the December 18, 1988 Affidavit of David Wolf* at 5. Badalamenti argued that defendants did not move for summary judgment when they received the Nike information, so I should not credit Wolf's hypothesis about what would have happened. Plaintiff also urged me not to exercise my discretion to include defendants' costs of bringing this Rule 37 motion in this sanction. *Id.* at 6.

Subsequently plaintiff argued that I should only consider the expenses incurred by defendants after January 1, 1987, and before April 22, 1987, approximately $44,-449. *Plaintiff's Memorandum as to Amount of Award* at 3–4. Plaintiff reasoned that defendants did not seek expenses incurred before January 1, 1987 and the omission did not cause further expense after defendants independently discovered the Nike correspondence on April 22, 1987. *Id.*

Plaintiff further argued that I should not even assess the $44,449. Badalamenti asserted that to award *any* expenses incurred after January 1, 1987, I would have to conclude that I would have granted summary judgment on the basis of the Nike prior art alone. *Id.* at 4–5. Badalamenti argued that because it is impossible to determine what would have happened differently without the discovery violation, defendants suffered no harm and I should assess no sanctions. *Id.* at 5. I disagree.

I may not, and do not now, impose sanctions beyond those costs incurred by defendants and caused by plaintiff's misconduct. However, sanctions serve purposes in addition to compensation; discovery sanctions also protect the judicial system. "The function of imposing sanctions is to assure both future compliance with the discovery rules and to punish past discovery failures, as well as to compensate a party for expenses incurred due to another party's failure to properly allow discovery." *Bell v. Automobile Club of Michigan*, 80 F.R.D. 228, 229 (E.D.Mich.1978) *appeal dismissed* 601 F.2d 587, *cert. den.* 442 U.S. 918, 99 S.Ct. 2839, 61 L.Ed.2d 285. "Rule 37 sanctions must be applied diligently both 'to

penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of a deterrent.'" *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 763–764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1979) (*citing Nat'l Hockey v. Metropolitan Hockey Club,* 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1975)).

■ I will not ignore the mandate of Rule 37(d) merely because plaintiff withheld this information for two years, and thereby made it difficult to assess the precise expense caused by this omission. Plaintiff withheld information directly bearing on the validity of his claim; the effect of this willful bad faith violation permeated this case. Plaintiff should not benefit from the fact that the nature of his violation made it difficult to determine the exact expense caused by the violation. I may impose costs without specifically listing each expense awarded. *Bell v. Automobile Club of Michigan, supra,* at 235.

Defendants have incurred at least $100,-000 in bringing this Rule 37(d) motion alone. These expenses are clearly traceable to plaintiff's misconduct. Even before the directed verdict, defendants incurred expenses in bringing their initial motion for sanctions. I granted the directed verdict on January 21, 1988, and was affirmed on appeal. From February, 1988 through November, 1988, defendants accrued expenses of approximately $92,196. *Affidavit of David Wolf,* Exhibit B. Defendants have undoubtedly incurred further expense in pursuing these sanctions after November, 1988 until the present. Therefore, I find that defendants' costs in bringing this Rule 37(d) motion alone total at least $100,000.

I find that a $100,000 sanction reflects a just portion of the reasonable expenses caused by plaintiff's violation. As in *Bell v. Automobile Club of Michigan, supra,* at 235, plaintiff was in an excellent position to avoid the costs accrued for the sanctions process, after the wrongdoing was discovered. It is clear that plaintiff's misconduct needlessly caused additional discovery expense and attorney's fees. There is no

reason to assume that this damage ceased when defendants discovered the violation. Given thse and all of the other circumstances of this case, I find $100,000 a just sanction.

Accordingly, defendants' motion for fees and costs pursuant to Rule 11 of the Federal Rules of Civil Procedure and 35 U.S.C. § 285 is DENIED. Defendant Hyde's motion for attorney's fees and costs pursuant to Rule 37 of the Federal Rules of Civil Procedure is GRANTED, defendant Hyde to recover from plaintiff Michael J. Badalamenti and attorney Ernie L. Brooks, jointly and severally, $100,000.

IT IS SO ORDERED.